688 So.2d 1303 (1997)
In re the Matter of James S. LANDECHE, Jr., Individually and as Administrator of the Estate of Carol Landeche
v.
Dr. Norman E. McSWAIN, Jr., et al.
James E. LANDECHE, Jr., et al.
v.
ABC INSURANCE COMPANY, et al.
Nos. 96-CA-0959, 96-CA-0960.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1997.
Writ Denied May 1, 1997.
*1304 Joseph W. Thomas, New Orleans, for Plaintiffs/Appellants.
Stewart E. Niles, Jr., Michelle A. Bourque, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Defendants/Appellees.
Before CIACCIO, PLOTKIN and LANDRIEU, JJ.
LANDRIEU, Judge.
In this medical malpractice suit, plaintiffs, the husband and three children of Mrs. Carol Landeche, have appealed a jury verdict denying recovery for the death of Mrs. Landeche. Because plaintiffs fail to specify any reversible errors, we affirm the trial court's judgment *1305 which was in accordance with the jury verdict.

FACTS
Carol Landeche first saw Dr. Norman McSwain on August 25, 1981 at the Tulane Surgery Clinic to request weight reduction surgery. Dr. McSwain recommended a type of gastrogastrostomy, a procedure described as "stomach stapling." To explain the procedure to Mrs. Landeche, Dr. McSwain used a styrofoam model, and he gave her a handout, which was ultimately signed by Mrs. Landeche and Dr. McSwain, describing the surgery in detail, outlining the consequences of the procedure and noting the risks.
According to this handout, a main complication of the surgery can be vomiting as a result of putting more food in the small pouch (which is what the stomach is made into) than it can hold. Intake of food and drink at each sitting is limited to two ounces, otherwise the patient will vomit.
Dr. McSwain then sent Mrs. Landeche home to think about whether she wanted the surgery. Although plaintiff, James Landeche, Mrs. Landeche's husband, testified that he did not want her to have the surgery, he said that she "demanded" it. Mrs. Landeche consented to the procedure and was admitted to Tulane Medical Center (TMC) on September 1, 1981 for preoperative testing. Before her surgery the following day, Mrs. Landeche signed the standard surgical consent form for gastric bypass. The surgery was apparently performed without incident.
Post-operative, a blood culture revealed streptococcus viridans, for which Mrs. Landeche was given antibiotics. This organism was never cultured out of Mrs. Landeche again.
Her only documented complaint during her hospital stay was neck and shoulder pain, for which she was given pain medication. Dr. McSwain had an orthopedist examine Mrs. Landeche to determine the origin of her complaints. Expert testimony at trial, as well as the orthopedist's report, indicated that her pain likely resulted from a previous injury and/or intubation while she was anesthetized during surgery.
A chest x-ray revealed pleural effusion, which is not uncommon after this type of surgery, but Mrs. Landeche's overall clinical status kept improving. Hence, Mrs. Landeche was discharged on September 13, 1981.
For three days after her discharge, Mrs. Landeche walked around her home, used the bathroom and prepared her own food. Her temperature remained normal. On September 16, however, she went to the emergency room in Luling with complaints of shoulder and neck pain. On September 18 Mrs. Landeche saw her family doctor for severe vomiting. Her blood pressure was low, and she was admitted to St. Charles Hospital for shock and renal failure.
On September 20 Mrs. Landeche was transferred to Jo Ellen Smith Hospital for "initiation of hemodialysis." Examination revealed that her abdomen was tender and distended and her chest x-ray showed free air. Dr. McSwain was finally contacted, and Mrs. Landeche was transferred to TMC on September 20.
Meeting her at TMC's emergency room, Dr. McSwain, after testing, felt that Mrs. Landeche had a gastrointestinal perforation. He immediately performed an emergency exploratory laparotomy and found a loop of small bowel in the left upper quadrant of her abdomen which was causing an infection. Dr. McSwain remedied this problem and also found no evidence of breakdown of her gastrogastrostomy.
Post-operative, Mrs. Landeche's condition was initially stable, but a urine culture did reveal pneumonia. By September 23, however, her condition worsened. She had fever, and abdominal cultures taken during her surgery revealed several types of infections. On September 25 other cultures revealed heavy pseudomonas. Mrs. Landeche's condition continued to deteriorate, and by October 8, her EEG recorded severe neurologic dysfunction. She died on October 12. Her death certificate stated that she died from exsanguination secondary to intraabdominal sepsis.

ISSUES
Before filing suit, plaintiffs/appellants requested a medical review panel. The panel *1306 convened on April 9, 1990 and ultimately concluded that the evidence did not support a finding that the defendants failed to meet the applicable standard of care. In plaintiffs' subsequent lawsuit and this appeal, their main contention is not that Dr. McSwain committed malpractice in the context of either of the surgeries he did on Mrs. Landeche; rather, plaintiffs claim that TMC failed to properly assess Mrs. Landeche's health care services and that Dr. McSwain failed to adequately monitor her post-operatively for signs and symptoms of intestinal obstruction, bacteria, and/or infection, and to act accordingly.
After a jury verdict in favor of the defendants, the trial judge entered judgment in accordance with the verdict and dismissed plaintiffs' case. This appeal resulted.
In their first assignment of error, plaintiffs claim that the trial judge erred by making improper comments to their attorney, essentially ordering him, in front of the jury, not to object. The record reveals that counsel for the defendants, during his questioning of witnesses, had a habit of either repeating what the witness had just said or making a comment, such as "O.K.," before proceeding to his next question. The record further reflects that plaintiffs' counsel objected numerous times to defense counsel's habit. The trial judge told defense counsel to stop what he was doing, and defense counsel made a conscientious effort to do so but was not totally successful. Plaintiffs' counsel himself occasionally did the same thing that he complained opposing counsel did.
It was only after the trial judge had apparently satisfied himself that what defense counsel was doing was a habit and not deliberate, that he told plaintiff's counsel to stop making that particular objection. We do not find that the trial judge's instruction to plaintiffs' counsel prejudiced plaintiffs' case, influenced the jury, or contributed to the verdict. Hence, this assignment of error is without merit.
Plaintiffs next contend that the trial judge erred because he sent the jury to deliberate without giving plaintiffs the opportunity to make objections to the jury charges and jury interrogatories. La.Code Civ. Proc. art. 1793 provides in part:
. . .
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury. (Emphasis added.)
In accordance with the requirements of article 1793, the trial judge in this case gave counsel for both parties copies of the court's jury charges and jury interrogatories at the close of the evidence and before closing arguments. Apparently, also before closing arguments, an in-chambers conference was held where the attorneys made objections to the charges and interrogatories. Counsel for both parties put their objections on the record after the jury retired to deliberate, all consistent with article 1793. This assignment of error, therefore, is without merit.
In another assignment of error, plaintiffs contend that the trial judge improperly restricted plaintiffs' counsel's voir dire questioning. Specifically, after plaintiffs' counsel asked the prospective jurors whether any of them had "been treated or gone to, or a relative gone to, Tulane Medical Center for treatment," counsel began questioning the jurors whose hands were raised to ascertain any partiality. Plaintiffs claim that before their attorney finished speaking to each juror who had indicated "yes" to the question, the trial judge said "Thank you, Counsel. That's it."
La.Code of Civ. Proc. art. 1763 provides:

*1307 A. The court shall examine prospective jurors as to their qualifications and may conduct such further examination as it deems appropriate.
B. The parties or their attorneys shall individually conduct such examination of prospective jurors as each party deems necessary, but the court may control the scope of the examination to be conducted by the parties or their attorneys.
The trial court has broad discretion as to the scope and extent of voir dire. Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224 (La.App. 3rd Cir.1974).
In this case, the trial judge initially questioned the first group of prospective jurors at length regarding whether they could be fair and objective in deciding the case. Then, he gave counsel for each party twenty minutes to question prospective jurors. The judge did curtail plaintiffs' counsel's questioning at the end of his allotted time. After defense counsel questioned these prospective jurors, the judge eliminated some jurors and brought in more prospective jurors for questioning. When plaintiffs' counsel questioned these jurors, however, he did not ask them the same question which he complained was cut off earlier.
Although plaintiffs' counsel objected to having his questioning curtailed, plaintiffs have identified no prejudice which they have sustained. The record does not indicate whether any particular juror for this trial was not allowed to answer the question at issue or one similar thereto. Instead, the record reflects that a complete and proper voir dire was conducted in this case, that neither party was denied the right to ascertain whether the jurors could be impartial and that neither party was denied the right to make appropriate challenges. We find no abuse of discretion by the trial judge.
In their fourth assignment of error, plaintiffs claim that the trial court exhibited bias and partiality in holding plaintiffs and defendants to two different sets of standards and rules. Having carefully reviewed the entire record in this case, we find no abuse of discretion by the trial judge in his various evidentiary rulings or his conduct throughout the trial.
Plaintiffs complain specifically about the trial judge's denial of their motion to exclude the deposition testimony of a doctor, although the defendants ultimately did not read the deposition into the record. Plaintiffs further suggest that the trial judge's cancellation of trial on one day because he was sick was suspicious. We find plaintiffs' suspicions unfounded.
Finally, plaintiffs complain in general about various evidentiary rulings made by the trial judge. Rather than claiming any one ruling was reversible error, plaintiffs claim that the judge's rulings, altogether, created the appearance of partiality to the defense or bias against plaintiffs.
There is no basis for an assignment of error as to the trial judge's various rulings because no substantial right of a party was affected as required by La.Code Evid. art. 103. Moreover, our review of the trial proceeding convinces us that the trial judge, when faced with an extremely argumentative trial, not only exercised restraint but was evenhanded in his rulings on the vast number of objections made by counsel. We detected no atmosphere of partiality toward either party. This assignment of error is without merit.
In their fifth assignment of error, plaintiffs contend that the jury instructions were erroneous, and the jury interrogatories were confusing and misleading and did not adequately set forth the issues to be decided. Plaintiffs complain of the trial court's jury instruction that the applicable standard of care was that which is usually exercised by physicians in the field of general surgery in 1981. Because the alleged malpractice occurred when Dr. McSwain treated Mrs. Landeche post-operatively and not while he was acting within his specialty of general surgery, plaintiffs claim, the standard of care in this case need not be proved for a specialty. Plaintiffs also complain that the trial court failed to instruct the jury as to the standard of care for post-operative care management.
Finding no merit to any of these arguments, we conclude that the jury charges given by the trial judge in this case were *1308 proper and in accordance with La.Rev.Stat. § 9:2794(A) which provides:
A. In a malpractice action based on the negligence of a physician ... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Dr. McSwain is a general surgeon, and he was acting within his specialty area when he provided health care services to Mrs. Landechebefore, during, and after her operations. Also, it is not the trial court's job to instruct the jury on what the standard of care is in a particular case, but it is the plaintiffs' burden to prove. See La.Rev.Stat. § 9:2794.
Plaintiffs also claim that the trial judge misread or mumbled through one jury charge. The court stated:
If you find that plaintiff was treated or examined by other doctors and that one or more of these doctors other than Tulane doctors failed to render proper medical care to plaintiff, then I charge you that such conduct is not the responsibility of Dr. McSwain.
This instruction is clear and is a correct statement of law. There is no merit to plaintiffs' suggestion that this instruction confused the jury.
Plaintiffs complain that the trial court's jury interrogatories also confused the jury because the trial judge did not include language about post-operative care. The jury's answer to the first jury interrogatory that plaintiffs failed to prove the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians practicing in the specialty of general surgery reflects the jury's belief that plaintiffs simply had not met their burden of proof. Plaintiffs' argument that the jury was confused, mislead and/or had rejected plaintiffs' experts' testimony is not supported by the record. Quite possibly, the jury found that, notwithstanding the testimony of plaintiffs' experts, plaintiffs had not established the standard of care in this case. We find no merit in plaintiffs' assignment of error regarding the jury instructions or interrogatories.
In plaintiffs' sixth assignment of error, they allege that the jury's findings were manifestly erroneous, contrary to the evidence, and the result of confusion or prejudice brought about by the trial court. Plaintiffs basically claim that their experts' testimony that Dr. McSwain deviated from the standard of care for post-operative care management in this case should not have been disregarded.
Having reviewed the record, we find clear conflict in the testimony of plaintiffs' and defendants' medical experts with respect to post-operative care of Mrs. Landeche. One of plaintiffs' experts testified that a procedure called a gastrografin swallow should have been performed to rule out a leak or intra-abdominal infection, and all of plaintiffs' experts seemed to think that the pleural effusion noted on Mrs. Landeche's x-rays and her neck and shoulder pain were not accorded enough significance by Dr. McSwain.
Conversely, defense experts and Dr. McSwain testified that x-rays taken on September 7 and 9 indicated a resolving pleural effusion, that her neck and shoulder pain could well have been attributable to intubation for surgical anesthesia or a previous *1309 injury, and that the gastrografin swallow was somewhat unreliable in 1981 to detect gastrointestinal perforation or intraabdominal abscess. Each of defendants' medical experts testified that Dr. McSwain's post-operative care and management of Mrs. Landeche from September 3 to September 13 (at discharge) complied with the prevailing standard of care, and there was no indication to re-operate on Mrs. Landeche during that time.
When, as in this case, there is a clear conflict in testimony among the medical experts, we will give great deference to the jury's resolution of the conflicting evidence. See Butts v. Cummings, 488 So.2d 1169 (La. App. 2nd Cir.), writ denied, 494 So.2d 327 (La.1986). The weight of the testimony and evidence in this case supports the jury's findings that Dr. McSwain's decisions in his care of Mrs. Landeche following her original surgery, as well as his decision to discharge her on September 13 were appropriate. Therefore, the jury's findings were not manifestly erroneous.
In their final assignment of error, plaintiffs allege that the trial court abused its discretion by refusing to allow an infectious disease specialist to testify as a rebuttal witness. Counsel for plaintiffs proffered a summary of his proposed testimony. Plaintiffs, however, only identified this doctor as a witness during trial, which was contrary to the trial court's pre-trial order.
A trial court is endowed with the inherent power to enforce its lawful pre-trial orders and to attach sanctions for non-compliance and is vested with much discretion in selecting the appropriate sanctions. Allwein v. Horn, 558 So.2d 810 (La.App. 5th Cir. 1990). Where a party fails to follow a court's pre-trial order, the burden is on that party to show why he failed to so comply. Id.
Plaintiffs offer no valid justification for their failure to disclose this doctor as a witness at any time before trial or on their list of witnesses read to the prospective jurors on the morning of trial. Nor is there support for plaintiffs' claim that they were prejudiced by the exclusion of this doctor's testimony. Indeed, plaintiffs admit that the jury could have rendered the same verdict had it heard this doctor's testimony. In finding that plaintiffs were not prejudiced by the exclusion of this testimony, we agree with defendants' observation that plaintiffs' medical experts, whom plaintiffs did not call as rebuttal witnesses, generally addressed the issues plaintiffs claim this doctor would have addressed.
Plaintiffs further complain of the trial judge's denial of their request to admit certain photographs into evidence because the photographs were not produced timely. Plaintiffs neither proffered the photographs nor explained how they were prejudiced by the exclusion of the photographs. Therefore, as with the exclusion of the doctor's testimony, we find no abuse of discretion in the ruling prohibiting these photographs into evidence.
We affirm the trial court's judgment which is in accordance with the jury verdict. All costs of this appeal are assessed to plaintiffs.
AFFIRMED.
PLOTKIN, J. dissents with written reasons.
PLOTKIN, Judge, dissenting with written reasons:
I respectfully dissent from the majority opinion affirming the trial court judgment in favor of defendants Dr. Norman S. McSwain Jr., the University Medical Center Hospital, and unnamed employees of the hospital in this medical malpractice case. I would find that the cumulation of the trial court's errors as described below, was so prejudicial as to deprive the plaintiffs of a fair trial. See Dixon v. Winn-Dixie Louisiana, Inc., 93-1627 (La.App. 4th Cir. 5/17/94), 638 So.2d 306, 316. Accordingly, I would vacate the trial court judgment and either conduct a de novo review or remand the case for a new trial.
My biggest concern in this case involves the trial court's instructions to the jury. LSA-R.S. 9:2794(A)(1), relative to the plaintiff's burden of proof in a medical malpractice action, provides, in pertinent part, as follows:

*1310 A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq. ..., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
In the instant case, the plaintiff's theory of recovery was not that the defendant improperly performed surgery, but that the defendant improperly managed the decedent's post-operative care. The plaintiff does not even make a claim for surgical malpractice, but claims that certain indications of post-operative complications were ignored prior to the decedent's discharge from the hospital. Thus, despite the fact that Dr. McSwain is a general surgeon, the plaintiff did not have the burden of proving the standard of care possessed by a general surgeon because "the alleged acts of medical negligence" in this case do not "raise issues peculiar to the particular medical specialty involved." Instead, the plaintiff had the burden of proving the standard of care exercised by any physician faced with the post-operative indications exhibited by the decedent.
Nevertheless, the trial court, in an extremely lengthy charge to the jury comprising some 12 typed legal pages when reduced in the trial transcript, made one primary statement concerning the plaintiff's burden of proof on this issue. He stated as follows:
Carol Landeche was operated on by Dr. Norman E. McSwain, Junior. Carol Landeche died. Her heirs contend that Dr. McSwain failed to provide the degree of care ordinarily practiced by physicians in the specialty of general surgery. In this case, the plaintiff has a three-fold burden of proof. First, the heirs or the plaintiff must prove the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians practicing in the field of general surgery....
Nowhere in the jury charge does the trial judge address the issue of post-operative care.
Moreover, the above statement is followed shortly by charges which essentially negate the effects of the first part of the law charge. The trial court stated as follows:
When a physician undertakes the treatment of a case, he does not guarantee a cure nor is any promise to effect a cure or even a partial healing to be implied, nor does the law raise from the fact of employment an implied undertaking of cure, but only an undertaking to use ordinary skill and care. A surgeon is not an insurer or guarantor of results. In a matter which is largely a judgment decision, if the treating physician follows a course of action sanctioned by authorities as equally qualified as those with opposing views and his judgment is reasonable and in keeping with the accepted standard of care, then the treating physician has been shown to have acted with reasonable care and diligence. A physician faced with several acceptable courses of treatment is not negligent for failing to choose a course of treatment which at a later time may be shown to be a wiser course. Thus, if you find that Dr. McSwain exercised reasonable judgment in determining the course of treatment for Mrs. Landeche consistent with his examinations and the patient's history, then you should render a verdict in favor of Dr. McSwain. A doctor is not negligent because he fails to follow a course of treatment which at a later time may be proven to be a wiser course. The doctor is only responsible for exercising his best judgment and administering reasonable care under the circumstances that face him at that time. Information which was not available at the time of treatment of the patient but later becomes available is not to be considered in deciding whether or not the physician deviated from the standard of care. Thus the treatment and *1311 actions of Dr. McSwain must be weighed, must be judged in light of the facts known to Dr. McSwain at that time and not on the basis of hindsight nor on the basis of what is later learned. A doctor's error of diagnosis is not negligence per se. Diagnosis is an act of professional judgment. In case of a misdiagnosis, the physician is negligent only if he misdiagnosed the results from the failure of the physician to exercise the standard or degree of care in diagnosis which would have been exercised by a member of his profession in good standing under similar circumstances.
The above very lengthy statement was followed immediately by an extensive statement on the defendant's burden of proof, much of which also served to negate the statements concerning the plaintiff's burden of proof.
A trial judge has an obligation to correctly charge the jury. Calhoun v. Federated Rural Electric Insurance Co., 571 So.2d 672 (La.App. 3d Cir.1990), writ denied, 577 So.2d 14 (La.1991). In order to fulfill that obligation, the instructions must "properly reflect the law applicable in light of the facts of the particular case." Jones v. Liberty Mutual Insurance Co., 568 So.2d 1091, 1094 (La. App. 5th Cir.1990), writ denied, 572 So.2d 72 (La.1991).
In this case, the plaintiff presented two expert witnessesone was a general surgeon, but the other was an internist. Moreover, in closing arguments, plaintiff's counsel specifically said that Dr. McSwain was outside his area of expertise in managing Ms. Landeche's post-operative care. Nevertheless, the trial judge specifically told the jury that the defendant should be held to the standard of care for a general surgeon, without making any reference to the post-operative care issues raised by the plaintiff. The jury instructions were therefore misleading because they were inconsistent with the issues raised by the parties. The majority's statement that the trial court has no duty to prove the standard of care begs the question. The trial judge does have a duty to instruct the jury concerning the law as it impacts the issues raised by the parties. The instructions did not "properly reflect the law applicable in light of the facts of the particular case." Jones, 568 So.2d at 1094.
Moreover, the majority improperly concludes that the jury instructions did not confuse the jury. The impact of the trial judge's instructions on the jury cannot be measured. I believe that the instruction given could well have both confused the jury and affected the verdict.
My second concern relates to the voir dire issue. I believe that a trial judge abuses his discretion by imposing an arbitrary time limit on voir dire. Imposing a time limit is not authorized by La. C.C.P. art. 1763 or by any other statutory or jurisprudential authority. Moreover, the result of the improper time limit in this case is that the plaintiff was deprived of an opportunity to conduct a full voir dire on an important issue in the case the jurors' possible relationship with the defendant hospital which could result in prejudice and bias. Imposing an inflexible principle that does not include options or choices for dealing with exigent circumstances is an improper use of the trial court's discretion. Summarily prohibiting a trial lawyer from developing an important issue on voir dire is also an abuse of discretion. Moreover, the fact that the plaintiff's attorney did not ask the question of the second group of jurors has no real bearing on this issue since he might simply have decided that he did not want to use his limited time with the second group on that question, because the trial judge would undoubtedly interrupt him again.
My third concern arises out of the trial court's admonishing the plaintiff's attorney not to make a valid objection. This issue becomes a special problem in light of the fact that the trial court had previously properly sustained an objection to the defense attorney's "habit" of repeating and commenting upon the witness's testimony and had in fact admonished the defense attorney not to do so. A trial court has a responsibility to enforce his orders, as well as a responsibility not to penalize a party for making meritorious objections. Even if the defense counsel's actions were habit, he should not be allowed to make extraneous comments in response to a witness's testimony. The trial court has an equal duty to control the opposing counsel. *1312 Moreover, the standard for determining whether the trial judge properly ordered the plaintiff's attorney not to make that objection is not whether the action influenced the jury; once again, the impact of that action on the jury in fact cannot be measured. Especially in light of all the other issues raised by the plaintiff, the trial judge's attitude may well have contributed to the jury's hostility toward the plaintiff and thus may have influenced the verdict.
My fourth concern relates to the trial court's refusal to allow the plaintiff to call a rebuttal witness because that witness was not listed in the pre-trial order. Rebuttal witnesses are never listed on a pre-trial order because the parties do not know who they will need to call in rebuttal. The parties have a right to call new witnesses; the only limit is the scope of rebuttal. The trial court could not properly refuse to admit the testimony of the rebuttal witness; his ruling on that issue is clearly wrong.
In a very close case, like the instant case, the battle for the mind of the factfinder is intense. The record in this case is replete with evidence of the contest. As this court recognized in Dixon, judicial errors may clearly influence a jury, especially in a close contest. The evidence presented at trial in favor of the defendants was not overwhelming. The result could obviously have gone either way. Thus, I would find that the trial court's cumulative errors require vacation of the judgment followed either by de novo review or remand for new trial.