716 So.2d 911 (1998)
SUCCESSION OF Allen Leroy HARVEY and Belinda Turlich Harvey
v.
Gary H. DIETZEN, et al.
No. 97-CA-2815.
Court of Appeal of Louisiana, Fourth Circuit.
June 24, 1998.
*913 Lynn Perkins Perez, Perez & Perez, Braithwaite, for Plaintiff/Appellant.
Thomas M. Richard, Chopin, Wagar, Cole, Richard, Reboule & Kutcher, Metairie, for Defendants/Appellees Linda Barrett and The Home Insurance Company.
Before BARRY, BYRNES and WALTZER, JJ.
BYRNES, Judge.
On behalf of herself and as administratrix of her late husband's succession, plaintiff, Mrs. Belinda Turlich Harvey, appeals a summary judgment dismissing her claims against the defendants, Linda G. Barrett and The Home Insurance Company. We affirm in part, reverse in part, and remand.
Originally, on February 6, 1987 the trial court appointed Mrs. Harvey as administratrix of the succession but she never qualified for that position. After Gary Dietzen, a business partner of the late Allen Harvey, filed a petition for declaration of a vacant succession on June 20, 1990, the trial court appointed Ms. Linda Barrett as administratrix on July 31, 1990, and her letters of administration were issued on January 15, 1991. When Mrs. Harvey challenged Ms. Barrett's appointment, Ms. Barrett filed a memorandum in opposition to plaintiff's motion to rescind the judicial order declaring the succession vacant. The trial court found that Ms. Barrett's appointment was improper because the succession was not vacant. Thereafter, Mrs. Harvey was recognized as the administratrix of the succession on September 18, 1991, and Ms. Barrett withdrew.
On October 23, 1991, Mrs. Harvey also filed suit against Ms. Barrett, and the trial court granted the defendant's exception of no cause of action. On appeal, this court reversed and held that Mrs. Harvey's petition sufficiently stated a cause of action for breach of Linda Barrett's duties to the succession while serving as administratrix in Succession of Harvey v. Dietzen, 616 So.2d 1288 (La.App. 4 Cir.1993).[1]
After the case was remanded and a hearing on the defendant's motion for summary judgment was held, the trial court dismissed Mrs. Harvey's claims against Ms. Barrett and her insurer, arising out of the breach of duty owed by Ms. Barrett as the administratrix of the Succession of Allen Leroy Harvey to Belinda Turlich Harvey and the succession.[2] The plaintiff's appeal followed.
In the present appeal of the summary judgment dismissal, Mrs. Harvey contends that the trial court erred in not considering whether issues of material fact existed as to whether Ms. Barrett breached her fiduciary duty and failed to act as a prudent administratrix of the succession. Mrs. Harvey alleges that Ms. Barrett's actions caused: (1) plaintiff and the succession to incur expenses when Mrs. Harvey returned to Louisiana *914 from Hawaii to oppose the appointment of Ms. Barrett and the attempted succession property sale; (2) plaintiff and the succession to suffer damages in the form of attorneys' fees; and (3) plaintiff to suffer mental pain and anguish.
Appellate courts review summary judgments de novo; an appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Cantrell v. Pat O'Brien's Bar, Inc., 97-0545 (La.App. 4 Cir. 1/7/98); 705 So.2d 1205. Procedurally, the court's task on a motion for summary judgment is determining whether the moving party's supporting documents pleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. art. 966(B).
In Gibson v. Roberts, 97-0454 (La.App. 4 Cir. 10/15/97); 701 So.2d 501, this court reviewed La. C.C.P. art. 966, as amended by Act 483 of 1997, which legislatively overruled the jurisprudential presumption against summary judgment. Noting that summary judgment is favored, this court stated:
... the movant's burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2). Id. at 503.
To be actionable, the defendant's conduct must be both the cause-in-fact and a legal cause of the defendant's damages. Conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm, i.e., but for the defendant's conduct, the plaintiff would not have sustained the injury. Quick v. Murphy Oil Company, 93-2267 (La.App. 4 Cir. 9/20/94); 643 So.2d 1291, 1295, writ denied 94-2583 (La.1/6/95); 648 So.2d 923. To provide legal cause, the plaintiff must show that the risk of the particular injury which the plaintiff suffered was within the scope of the protection of the duty that the defendant breached. Id. at 1207-08. The existence of a duty is a question of law which may be resolved on summary judgment. Richter v. Provence Royal Street Co., L.L.C., 97-0297 (La.App. 4 Cir. 10/8/97); 700 So.2d 1180.
To recover, the plaintiff must show that the actions of Ms. Barrett as the former administratrix of the succession were the cause-in-fact and the legal cause of Mrs. Harvey's claimed damages. These damages are reviewed as follows:

I. ATTORNEYS' FEES
It is well settled that attorneys' fees can only be granted if specifically provided for by statute or contract. Succession of Harvey, supra, 616 So.2d 1281 at 1285 (La. App. 4 Cir.1993). In that prior related decision this court held that: "... there is no provision of law or contract which gives rise to the award of attorneys' fees against Gary Dietzen." Id. For the same reasons there is no merit to Mrs. Harvey's claim for attorneys' fees against Ms. Barrett in the instant case.

II. TRAVEL EXPENSES
Mrs. Harvey claims damages for the cost of her flying from Hawaii to Louisiana and the cost of living in Louisiana including rent, utilities, food, medical costs, buying an automobile, furniture, curtains, appliances, etc. while she challenged the appointment of Ms. Barrett as administrator when the succession was found to be vacant.
Mrs. Harvey would have had living expenses if she stayed in Hawaii. It was her decision to move to Hawaii without personally pursuing her duties as succession representative. To oppose the sale, it was not necessary for Mrs. Harvey to leave Hawaii. If she appointed a resident agent for service of process and filed the appointment in the succession proceeding, she could have remained in Hawaii and served as the succession representative. Opposition to Ms. Barrett's *915 administration and attempted property sale did not mandate that Mrs. Harvey incur travel and living expenses to defend her claims. The risk that Mrs. Harvey would set up another household in Louisiana and incur travel and living expenses is not within the scope of the protection of the duty owed to her by Ms. Barrett.

III. MENTAL PAIN AND ANGUISH
On appeal Mrs. Harvey argues that she suffered from severe mental pain and anguish caused by Ms. Barrett's breach of her fiduciary duty and failure to act as a prudent administratrix of the succession.
La. C.C.P. art. 3191 provides:
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure to act.
A nonresident succession representative may execute a power of attorney appointing a resident of the state to represent him in all acts of his administration. A resident succession representative who will be absent from the state temporarily similarly may appoint an agent to act for him during his absence. In either case, the power of attorney appointing the agent shall be filed in the record of the succession proceeding.
Mrs. Harvey claims that Ms. Barrett breached her fiduciary duty to the succession by:
(1) Twice petitioning the trial court to sell the property under an invalid agreement;
(2) Agreeing with Dietzen's attorney to petition the court for approval of the sale if the Harvey heirs could not reach an agreement to sell;
(3) Failing to (a) attach a copy of the agreement to the petition for private sale and (b) to provide the widow and heirs with a copy of the agreement until a few days prior to her withdrawal as curatrix;
(4) Failing to make demand that Safeguard/Dietzen pay the estate for tank rentals;
(5) Failing to request or review the proposed purchasers' shareholder and board minutes, tax returns, and royalty agreement by which Dietzen claimed and deducted a fee on the Harvey tank rentals;
(6) Failing to respond to Dietzen/Safeguard's memorandum which stated that Ms. Barrett could sell the one-half community interest in property owned by Mrs. Harvey individually;
(7) Failing to withdraw as curatrix once the widow qualified as administratrix and filing an opposition to the motion to rescind the judicial order declaring the succession vacant; and
(8) Other acts and omissions.
In opposition, the defendants contend that the psychiatric report of Dr. Paul Kantack is deficient for summary judgment purposes because it was not given under oath. In Powers v. Tucker, 29,190 (La.App. 2 Cir. 2/26/97); 690 So.2d 922, 926, the statements of the defense medical expert in a letter to the personal injury plaintiff's counsel was not of sufficient evidentiary value to be given weight in determining whether there was a genuine issue of material fact. In that case the doctor's affidavit showed that his statements are "based on his professional experience and training and upon his review of all medical records related to the treatment of [the plaintiff]." His professional experience and training were not provided except for the assertion that he is "a medical doctor specializing in the diagnosis and treatment of infectious diseases and is qualified to make the following statements." Further, the court noted that attached medical reports were not certified under La. R.S. 13:3714.
La. C.C.P. art. 967 states in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached *916 thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits. [Emphasis added.]
In the present case Dr. Kantack's report contains his degrees of M.D., F.A.P.M., F.A.P.A., and his status as a psychiatrist. Dr. Kantack states that he saw the plaintiff on two occasions. Therefore, his observations are based on personal knowledge. The record indicates that the report bears Dr. Kantack's original signature and that it also bears the original signature of a notary public stating that it was given under oath. The notary public handwrote the standard form: "Sworn to and subscribed before me this 18 day of July 1997." This adequately fulfills the affidavit requirements of La. C.C.P. art. 967.
Further, the failure to object to a formal defect is deemed to be a waiver of such objection. Davis v. Copeland Enterprises, Inc., 390 So.2d 891, 894 (La.1980); Grelle v. Youngblood, 96-2210 (La.App. 4 Cir. 3/26/97); 691 So.2d 279, writ denied 97-1287 (La.9/5/97); 700 So.2d 510. At the hearing on the motion for summary judgment, Ms. Barrett's attorney stated that plaintiff "intends to support this claim with the inadmissible affidavit of a psychiatrist that her attorney referred her to." This reference does not contain a direct objection with supporting reasons in the record.
Counsel for the defendants asserted during oral argument that mental anguish was not incurred by the succession. In M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708 (La.App. 3 Cir.1982), awarding a corporation damages for mental anguish suffered as a result of trespass was error, in view of the fact that a corporation could not experience mental anguish. However, Mrs. Harvey brought this action individually on her own behalf as well as on behalf of the succession. Although the succession could not experience mental anguish, Ms. Barrett's fiduciary duty was to the individual heirs of the succession. As the surviving spouse who had interest in the community property, Mrs. Harvey personally presented a claim for the mental anguish she incurred because of a breach in Ms. Barrett's fiduciary duty.
A cause of action for intentional infliction of emotional distress is viable in Louisiana; one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress. White v. Monsanto Co., 585 So.2d 1205 (La.1991); Holt v. Rapides Parish Police Jury, 574 So.2d 525 (La. App. 3 Cir.1991). To recover for intentional infliction of emotional distress, the plaintiff must show that the conduct of the defendant was extreme and outrageous, that the emotional distress suffered by the plaintiff was severe, and that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., supra.
A plaintiff can recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury. Beis v. Bowers, 94-0178 (La.App. 4 Cir. 1/19/95); 649 So.2d 1094, writ denied 95-0429 (La.3/30/95); 651 So.2d 847; Bordelon v. St. Frances Cabrini Hospital, 93-1331 (La.App. 3 Cir. 5/4/94); 640 So.2d 476. However, an independent tort of negligent infliction of emotional distress is not recognized. Landrum v. Board of Com'rs, 95-1591 (La.App. 4 Cir. 11/27/96); 685 So.2d 382. Recovery for mental anguish is limited to instances of outrageous conduct. Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081, 1095-96 (La. 1990);
In the present case the plaintiff must show that there is a material issue of fact that she incurred severe mental distress which was caused by a breach of fiduciary duty due to the extremely outrageous intentional or negligent conduct of the former administratrix, Ms. Linda Barrett.
The primary purpose of the succession administration is payment of the debts of the succession, and all powers and duties of an administrator are incidental to that purpose. Succession of Roberts, 255 So.2d 610 (La. App. 1 Cir.1971), writ denied, 260 La. 682, 257 So.2d 148 (1972).
*917 Failure of the executor of the succession to collect a note payable to the decedent from the partnership composed of the executor and his wife constituted a breach of the executor's fiduciary duty to collect all the property of the succession in Succession of Skye, 417 So.2d 1221 (La.App. 3 Cir.1982), writ not considered, 422 So.2d 161, writ denied 422 So.2d 165 (La.1982). However, there was no review of a claim for emotional distress.
A house lessor could not recover against a bank for emotional distress and mental anguish based on the lessor's being upset by his tenant's distress after the bank mistakenly notified the tenant that the house was being seized and she would have to move, lessor did not allege that actual damage to his property occurred, or that he suffered any more than normal concern in Frisard v. Eastover Bank for Sav., 572 So.2d 343 (La. App. 5 Cir.1990). In that case the appellate court held that recovery of emotional distress damages is rare for damages to property or interference with property rights.
Minimal and normal inconvenience is not compensable. Vial v. South Central Bell Telephone Co., 423 So.2d 1233 (La.App. 5 Cir.1982), writ denied 432 So.2d 265 (La.1983). For a cause of action for intentional or negligent infliction of emotional distress, there must be proof that the defendant violated some legal duty to the plaintiff, and the plaintiff must meet the heavy burden of proving outrageous conduct by the defendant. Scamardo v. Dunaway, 94-545 (La. App. 5 Cir. 2/15/95); 650 So.2d 417, appeal after remand, 96-1036 (La.App. 5 Cir. 4/29/97); 694 So.2d 1041, writ denied, 97-1395 (La.9/5/97); 700 So.2d 517. In that case, the former husband filed suit against the doctor for negligent or intentional infliction of emotional distress. The former husband alleged that while the husband and wife were consulting with the doctor for infertility treatment, the doctor and wife engaged in an adulterous affair which ultimately made the plaintiff's marriage insupportable. The Fifth Circuit found that the plaintiff did not state a cause of action for intentional or negligent infliction of emotional distress but the husband was allowed to amend his complaint.
After remand, the appellate court again held that the husband's allegations, which were based on the underlying fact of the adulterous relationship, did not give rise to an action for emotional distress. That court noted that: "... unless the actor has knowledge of the plaintiff's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities." Id., 650 So.2d at 419. The susceptibility of a particular plaintiff should be taken into account whether the defendant intended or negligently inflicted severe emotional distress.
In addition to the return of the value of funds converted, damages of $500 to each of the parents were recoverable for inconvenience, aggravation, distress, mental shock, anguish, and humiliation to parents in their action against attorneys to recover their portion of wrongful death settlement fund in Guidry v. Rubin, 425 So.2d 366 (La.App. 3 Cir.1982).
Where a bank acted wrongfully in failing to release an absolutely null mortgage, the party suing the bank was entitled to $2,500 damages for mental anguish, inconvenience and embarrassment, together with legal interest on that sum in Coburn v. Commercial Nat. Bank, 453 So.2d 597 (La.App. 2 Cir. 1984), writ denied, 457 So.2d 681 (La.1984). In that case the bank allowed the husband to mortgage the property without the wife's consent where the wife's signature was clearly necessary. The bank did not have an authentic act allowing the husband to mortgage the property without the wife's consent, and the bank was charged with knowledge of the facts.
Genuine issues of material fact precluded summary judgment on whether the customer and his minor son suffered emotional distress damages arising out of a convenience store clerk's alleged harassment and threats against the customer in the son's presence in Susananbadi v. Johnson, 97-91 (La.App. 5 Cir. 9/17/97); 700 So.2d 886.
The appellate court reversed the trial court's judgment and awarded $25,000 for mental anguish caused by the wrongful issuance of a temporary restraining order (TRO) *918 in ARCO Oil & Gas Co. v. Deshazer, 96-1344 (La.App. 3 Cir. 5/21/97); 698 So.2d 408, writ granted, case remanded, 97-2552 (La.1/9/98); 704 So.2d 246, and on remand, 96-1344 (La. App. 3 Cir. 5/6/98); 714 So.2d 806.In that case a consultant for a gas company was prohibited from performing consulting work pursuant to a TRO. The appellate court stated:
Mr. DeShazer exhibited behavior patterns which exemplified those of clinically depressed people during the six-month period in which the restraining order was in place. Louise DeShazer, Mr. DeShazer's wife and a nurse by profession, noted a number of these patterns. Mr. DeShazer was unable to concentrate. He felt as if he had no self worth since he was not working and could not provide for his family. He spent most of his time sleeping or watching television. He would scream at Mrs. DeShazer for no apparent reason and then later become very apologetic. These actions would produce large arguments between the couple, creating a great deal of stress and strain on the marriage. There was such a strain on the marriage and the family that Mrs. DeShazer contemplated leaving Mr. DeShazer on several occasions. Id. 698 So.2d at 411.
The appellate court noted an example of the husband's inability to buy Christmas dinner or presents for the family. Stress was placed on Mr. DeShazer from unpaid bills. He was constantly thinking that he was an inadequate person, husband, and father. The case was remanded from the Supreme Court for an en banc hearing to determine if the case was in conflict with Fontenot v. Petmecky, 386 So.2d 702 (La.App. 3 Cir.), writ denied 393 So.2d 747 (La.1980), which determined that no authority existed for the award of mental anguish damages under La. C.C.P. art. 3608. After an en banc hearing, the Third Circuit overruled Fontenot v. Petmecky, and affirmed its prior opinion, finding that damages for mental anguish are recoverable in a legal malpractice case.
In the present case the record does not show evidence that Ms. Barrett influenced Gary Dietzen's decision to file a petition seeking a declaration that the succession was vacant. Nor does Mrs. Harvey contend that Ms. Barrett is responsible for the fact that the trial judge appointed her to the "vacant" succession. However, the record shows that Ms. Barrett relied on the information given her by the attorney for Dietzen and Safeguard who wanted to buy the tanks and the deceased's 37 percent interest in Safeguard.
Mrs. Harvey points out that Ms. Barrett could have paid the debts of the succession if she had made a demand for the debt Dietzen owed the succession for tank rentals and director's salary owed to the deceased. Therefore, Ms. Barrett would not have had to sell the tanks or Safeguard stock to Dietzen. The agreement contained a compromise of all claims against Dietzen. Ms. Barrett did not get an independent assessment of the value of the Safeguard stock. Ms. Barrett relied on the fact that the deceased and the surviving spouse were in personal bankruptcy, and the value was low. Ms. Barrett obtained Safeguard's 1989 tax return which showed a retained earning of $375,000; however, Ms. Barrett twice advertized the sale and originally was going to allow the sale for approximately $20,000 for Mr. Harvey's 37% of the stock to Dietzen. After the oldest son/heir, Kenneth Harvey, opposed the first sale, the price was increased to $27,500. The price for the sale of 37% of the stock was much lower than its apparent value from Safeguard's 1989 tax return.
Mrs. Harvey stated that Ms. Barrett told the plaintiff that plaintiff could not stop the sale although she had a community interest in the Safeguard stock. The plaintiff points out that Dietzen's attorney argued that Mrs. Harvey's community interest could be sold by the curatrix, and Ms. Barrett did not respond to that pleading.
La. C.C. art. 1095 provides that a succession is called vacant when no one claims it, or when all the heirs are unknown, or when the known heirs have renounced it. In the present case Mrs. Harvey claims that Ms. Barrett should have been aware that the succession was not vacant, and that her appointment was invalid. Ms. Barrett acknowledged that she knew about Mr. Harvey's five children and the surviving spouse. Ms. Barrett *919 asserts that she did not object to her own removal but opposed the plaintiff's motion to rescind Ms. Barrett's appointment as the administratrix because Ms. Barrett would not be paid. Ms. Barrett acknowledged that she consulted with the attorney for Dietzen and Safeguard in filing the opposition to the motion to rescind Ms. Barrett's appointment on her behalf.
Although Ms. Barrett may not have intentionally breached her fiduciary duty to harm Mrs. Harvey or the succession, there is an issue of material fact as to whether, considering the affidavits and depositions, etc., Ms. Barrett's negligence could be considered outrageous, and her breach of fiduciary duty caused the plaintiff severe emotional distress under the totality of circumstances.
For liability the intentional or negligent breach of fiduciary duty must result in severe emotional distress. In the present case, Dr. Paul W. Kantack performed a psychiatric evaluation of the plaintiff after seeing her on July 16 and 17, 1997. In his report dated July 17, 1997, Dr. Kantack diagnosed Mrs. Belinda Harvey as experiencing: (1) anxiety mixed with depressive disorder; and (2) bereavement. Mrs. Harvey had a mild avoidant personality with dependent personality traits which were not disorders. Dr. Kantack noted that the plaintiff dealt with other problems, including the bankruptcy and tax problems of her husband before his death, the death of her husband, and thereafter her two pregnancies. Dr. Kantack found that she had "severe psychosocial stress from litigation." He opined that she could benefit from some supportive psychotherapy and medication, including Remeron and Serzone to help her deal with anxiety and depression.
In her deposition, Mrs. Harvey stated that she had tried to obtain records from Safeguard after she was originally appointed as administratrix. She understood that she could not be qualified as administratrix until she submitted a descriptive list and a bond. She needed to get the records from Safeguard in order to become qualified as the administratrix; however, she could not obtain Safeguard's records until she obtained the letters as administratrix. She felt that she was caught in a "Catch 22" situation. After the death of her husband, when Mrs. Harvey went to a board meeting, her previous attorney also appeared but was not allowed to attend the meeting. Mrs. Harvey told of a situation of where Ken Harvey did not want his ex-wife to know of his interest in one of the companies, and Kenneth's stock interest in one company was listed as belonging to the deceased and was not disclosed in the Chapter 11 proceedings. Mrs. Harvey stated that she "fled" Louisiana because of her distress over the problems of the succession. She was alarmed that she could not obtain Safeguard's records; that sub rosa transactions were taking place; that she was not given information about the succession;[3] and that she might be liable for extensive tax liens.
Although Ms. Barrett was not responsible for the prior events, her handling of the succession added to Mrs. Harvey's emotional distress. Ms. Barrett confirmed that Mrs. Harvey was very upset and emotional when they conversed. Ms. Barrett stated: "basically what I was getting from Belinda was a lot of emotional stuff, which I knew that she had to vent, and I allowed her to vent...." In her affidavit Ms. Barrett stated that:
On October 24, 1990, I spoke to Belinda Harvey's mother, Mrs. Turlich. I advised her of my appointment and spoke to her at some length concerning my need to get in touch with Belinda regarding the Succession of Allen Harvey. She promised to contact Belinda and give her this information and expressed her concern about "reopening" the Succession because it had been so stressful for her daughter to deal with.
Making an evaluation of credibility has no place in determining summary judgment; it is not the trial court's function on motion for summary judgment to determine or even inquire into the merits of the issues raised. Rapp v. City of New Orleans, 95-1638 (La. *920 App. 4 Cir. 9/18/96); 681 So.2d 433, writ denied 96-2925 (La.1/24/97); 686 So.2d 868; Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96); 678 So.2d 580. Deposition testimony may be used to support or oppose a motion for summary judgment, but it is not weighed. Leflore v. Coburn, 95-0690, 95-0249 (La.App. 4 Cir. 12/28/96); 665 So.2d 1323, writ denied 96-0411 (La.3/29/96); 670 So.2d 1234, writ not considered, 96-0453 (La.3/29/96); 670 So.2d 1234. The non-moving party must show that he will be able to satisfy his evidentiary burden of proof at trial under amended La. C.C.P. art. 966 C(2).
Accepting the evidence offered by Mrs. Harvey in opposition to the defendants' motion for summary judgment on the question of mental anguish, Mrs. Harvey has demonstrated that there are issues of material fact. The material fact issues concern: (1) whether Ms. Barrett's actions under the circumstances of this case, resulted in an extremely negligent breach of her fiduciary duty, and (2) whether she negligently inflicted severe emotional distress and mental anguish on Mrs. Harvey. Ms. Barrett's actions included: becoming an administratrix when she should have known that the succession was not vacant; twice attempting to sell the assets without independently determining whether the estimated value of the stocks and tanks was reasonable or low; opposing her own removal as administratrix; and not giving Mrs. Harvey and the heirs information about the sale agreement as being a compromise of all claims by Dietzen and Safeguard.

IV. SANCTIONS
Mrs. Harvey also asserts a claim for sanctions under La. C.C.P. arts. 863 and 2164, which the trial court denied.
La. C.C.P. art. 863 provides in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
Sanctions are an appropriate remedy to prevent the abuse of judicial process. Rochon v. Roemer, 93-2444 (La.1/7/94); 630 So.2d 247, certiorari denied 512 U.S. 1224, 114 S.Ct. 2716, 129 L.Ed.2d 841 (1994). There is no breach if a party and counsel in good faith decide to challenge an existing law after reasonable legal research and adequate factual investigation; the statute dealing with false certification of a pleading does not limit sanctions to reasonable expenses. Hester v. Hester, 96-0189 (La. App. 4 Cir. 9/11/96); 680 So.2d 1232, writ denied 96-2452 (La.12/6/96); 684 So.2d 933, writ denied, 96-2468 (La.12/6/96); 684 So.2d 934. Subjective good faith will not satisfy the duty of reasonable inquiry. Loyola v. A Touch of Class Transp. Serv., 580 So.2d 506 (La.App. 4 Cir.1991).
La. C.C.P. art. 2164 provides:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any *921 party to the suit, as in its judgment may be considered equitable.
Plaintiff contends that Ms. Barrett was in bad faith in being appointed administratrix when she should have known that the succession was not vacant under existing law after reasonable legal research and adequate factual investigation. Ms. Barrett knew that the deceased had five children and a surviving spouse with a community interest. Ms. Barrett also attempted to sell the succession's assets without the approval of the heirs and the surviving spouse, and without making an independent determination of the assets' value. Mrs. Harvey avers that Ms. Barrett should have questioned the proposed price which was low based on Safeguard's 1989 tax return. Ms. Barrett appeared to be biased because she consulted with the attorneys for Safeguard and Dietzen about her opposition to the rescission of her appointment as administratrix to her benefit rather than that of the succession, its heirs and the surviving spouse. Plaintiff's claim for sanctions should be reviewed after trial on the merits of plaintiff's claim based on Ms. Barrett's breach of fiduciary duty.
The amendment to La. C.C.P. art.1915 liberalized the availability of partial summary judgments. Accordingly, the judgment of the trial court is affirmed in dismissing the plaintiff's claims for traveling and living expenses, as well as attorney's fees on motion for summary judgment as there are no issues of material fact concerning those claims.
However, there are genuine issues of material fact. The trial court improperly dismissed the motion for summary judgment in favor of defendants Linda G. Barrett and Home Insurance Company on the issues of whether Ms. Barrett breached her fiduciary duty; whether that breach caused the plaintiff severe emotional distress; and whether sanctions are appropriate pursuant to La. C.C.P. arts. 863 and 2164. Accordingly, the judgment is reversed in part. The case is remanded for further proceedings. Costs are assessed to the defendants, Ms. Linda G. Barrett and The Home Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Mrs. Harvey also opposed Dietzen's petition and filed a reconventional demand for damages against him for interference with the succession. The trial court maintained Dietzen's exceptions of improper venue, no cause of action and no right of action with respect to those damage claims.

On appeal this court held that the succession was not vacant. Attorneys' fees and costs incurred by Ms. Barrett were improperly assessed to the succession; however, Mrs. Harvey's attorneys' fees and costs for defending against Dietzen's improper interjection were properly assessed against the succession. Mrs. Harvey's claims against Dietzen for alleged unpaid wages and rentals as well as breach of fiduciary duty were improperly raised in the succession proceedings but constituted a separate cause of action by the succession against the defendants, Dietzen and Safeguard Disposal Systems, Inc., in which Dietzen, the majority stock holder, and the late Allen Harvey had been partners. General venue rules applied so that those claims were transferred to Lafayette Parish. See Succession of Harvey v. Dietzen, 616 So.2d 1288 (La.App. 4 Cir.1993). On September 11, 1997 Mrs. Harvey entered into a settlement agreement with Dietzen and Safeguard.
[2] Mrs. Harvey originally also made claims for loss of dividends and diminution of the value of stock. She has asserted no claim for these items in connection with this appeal.
[3] Dietzen only received royalties from Safeguard or from the Harvey tanks after Allen Leroy Harvey's death. Deductions were charged for insurance, royalties and administrative fees and were taken from Safeguard's tank rentals only after Allen Leroy Harvey's death.