THOMAS C. DUFRECHE     *     NO. 2020-CA-0030

VERSUS     *

JEFFREY WAYNE COCO, MD     *     COURT OF APPEAL

AND INTERNAL MEDICINE     FOURTH CIRCUIT

SPECIALISTS, INC.     *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-03960, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge
Dale N. Atkins)

T. Carey Wicker, III
James Alexander Watkins
Vincent E. Odom
CAPETELLI & WICKER
1100 Poydras Street, Suite 2950
New Orleans, LA 70163-2950


    COUNSEL FOR PLAINTIFF/APPELLEE


Kathryn M. Caraway
Ann Marie LeBlanc
Erica L. Andrews
CARAWAY LEBLANC, L.L.C.
3936 Bienville Street
New Orleans, LA 70119


    COUNSEL FOR DEFENDANT/APPELLANT

    **AFFIRMED**
    **APRIL 15, 2020**

DNA
JFM
TFL

This is a medical malpractice case. Appellants, Dr. Jeffrey Wayne Coco and Internal Medicine Specialists, Inc. ("IMS"), appeal the trial court's judgment finding that they breached the applicable standard of care in their treatment of Appellee, Thomas C. Dufreche, and awarding Mr. Dufreche $45,000 in damages for negligent infliction of emotional distress. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to 2012, Mr. Dufreche underwent periodic testing for human immunodeficiency virus ("HIV"). In June 2012, Mr. Dufreche sought HIV testing from Dr. Coco, a physician in New Orleans who specializes in infectious diseases. At the time when Dr. Coco treated Mr. Dufreche, Dr. Coco was practicing in the area of infectious diseases at IMS in New Orleans.

In May 2012, prior to Mr. Dufreche seeing Dr. Coco, Mr. Dufreche sought treatment from his primary care physician, Dr. Alan Bowers. Dr. Bowers administered a rapid HIV anti-body blood test[1] for Mr. Dufreche. The test was negative. A few weeks later, on June 9, 2012, Mr. Dufreche went to the emergency

---

[1] This test picks up the anti-bodies that a patient develops in response to the antigens that are on the cell wall of the HIV virus. Usually, results are reported in less than an hour.

room at Touro Infirmary Hospital ("Touro") in New Orleans for general malaise, and another rapid HIV anti-body blood test was performed, which was also negative. The medical providers at Touro performed several other diagnostic tests, yet were unable to diagnose the cause of Mr. Dufreche's symptoms.

After his symptoms persisted, Mr. Dufreche's friend and neighbor Kevin Adams, who was a nurse at Touro, suggested that Mr. Dufreche seek follow-up treatment from Dr. Coco at IMS. Mr. Adams helped Mr. Dufreche get an appointment with Dr. Coco on June 12, 2012. Mr. Dufreche's appointment with Dr. Coco lasted about forty-five minutes. According to Mr. Dufreche, Dr. Coco told Mr. Dufreche that he believed Mr. Dufreche's malaise symptoms were likely the result of a virus that would run its course and about which Mr. Dufreche need not worry. Nevertheless, at Mr. Dufreche's request, Dr. Coco ordered an HIV viral load blood test for Mr. Dufreche, also called the HIV-RNA quantitative test, which measures active viruses in the body. The results took a few weeks to come back. According to Mr. Dufreche, at the conclusion of his appointment, Dr. Coco informed him that Dr. Coco would notify him of the results of the test when they came in.

Dr. Coco received the results of Mr. Dufreche's HIV test at IMS on June 19, 2012, and he reviewed them on June 21, 2012. The test showed Mr. Dufreche had HIV and a high viral load.[2] Dr. Coco did not notify Mr. Dufreche when he received the results of Mr. Dufreche's HIV test, nor did anyone else at IMS. Consequently, Mr. Dufreche never had a follow-up appointment with Dr. Coco. According to the record, Dr. Coco reviewed Mr. Dufreche's test results again several months later so

---

[2] Viral load is used to determine the amount of HIV in the blood. The higher the load, the more susceptible the patient is to becoming ill because of HIV.

he could sign Mr. Dufreche's medical chart. Again, Mr. Dufreche was not notified of the test results.

According to Dr. Coco, it is and always has been his practice to have his office staff request that patients schedule follow-up appointments when ordering HIV tests so that the results of the test could be discussed with the patient in person. Dr. Coco maintained that he never discusses the results of HIV tests with patients via telephone because of the sensitive nature of communicating such test results and the need to provide some counseling and treatment options to the patient. Nevertheless, Dr. Coco, nor anyone from his staff, could recall or definitively show through Mr. Dufreche's medical records or otherwise whether Mr. Dufreche was ever informed of this policy or asked to schedule a follow-up appointment. Mr. Dufreche maintains that he was never told that a follow-up appointment needed to be scheduled, and he heard nothing further from Dr. Coco. When he received no communication from Dr. Coco or IMS and his symptoms subsided, Mr. Dufreche assumed that, as Dr. Coco had said, his symptoms were the result of a virus that had run its course and the results of the HIV test were negative.

Fifteen months passed, during which Mr. Dufreche was unaware that he was HIV positive. In September 2013, after he could not get an appointment with Dr. Bowers, Mr. Dufreche sought treatment from another primary care physician, Dr. Kenneth Combs, for small spots on his left leg, sinus issues, and a flu shot. At Mr. Dufreche's request, Dr. Combs ordered an HIV anti-body western blot test. The test was positive. Before Dr. Combs could notify Mr. Dufreche of his positive HIV test, a social worker with the Louisiana State Department of Health ("LDH") contacted Mr. Dufreche and offered him help in finding medical care due to a

3

blood test that had been reported to the LDH. When Mr. Dufreche met with the social worker from the LDH in person a few days later, he learned the positive blood test in the LDH's possession was the one from Dr. Coco's office that was performed in June 2012. This was the first time Mr. Dufreche was notified he was HIV positive, and he immediately sought treatment from Dr. Bowers.

Mr. Dufreche filed a request for a medical review panel on September 27, 2014. The panel unanimously concluded that there was a material issue of fact bearing on Dr. Coco's and IMS's liability for the court's consideration on the following issues:

1.  Whether or not the patient was notified of Dr. Coco's office policy to make a follow-up appointment in reporting HIV test results.

2.  Whether CDC guidelines indicate that the communication of positive HIV test results should not be communicated by telephone or mail and follow-up appointments are recommended.

3.  Whether Mr. Dufreche was offered a follow-up appointment by Dr. Coco or his staff, as Dr. Coco's medical records do not reflect a written policy to indicate how HIV test results are communicated or whether the patient was offered a follow-up appointment, nor do they reflect whether the patient attempted to obtain his results.

On April 26, 2017, Mr. Dufreche filed a petition for damages in Orleans Parish Civil District Court, naming Dr. Coco and IMS as defendants. He alleged that Dr. Coco and IMS deviated from the applicable standard of care of a physician and a physician's clinic by mismanaging Mr. Dufreche's medical care, failing to advise Mr. Dufreche of his positive HIV status, and failing to follow-up on medical tests ordered and sent from IMS. Mr. Dufreche further alleged that, because of Dr. Coco's and IMS's negligence, he went unaware that he was HIV positive for

4

approximately fifteen months, suffered a delay in treatment for his medical condition, and suffered from the psychological shock of learning that he had HIV by the LDH via telephone. He also alleged emotional distress from worry over his prognosis in treating HIV due to the delay in treatment and from not knowing whom he may have infected during the fifteen-month period in which he was unaware he was HIV positive.

The matter proceeded to bench trial on April 15-16, 2019. Prior to trial, the parties stipulated that Mr. Dufreche's damages were less than $50,000. At trial, Mr. Dufreche called himself; Dr. Coco; medical review panelist Dr. Eric Ehrensing, who opined about the applicable standard of care; his friend Mr. Adams; and LDH social worker Mary Boutte, who first informed Mr. Dufreche about the positive HIV test results from Dr. Coco's office. IMS and Dr. Coco also called Dr. Coco; Dr. Bowers; and IMS employees Crandall Warren and Lauren Bergeron, who both testified about the standard practice at IMS that patients must schedule follow-up appointments to receive the results of HIV tests in person.

At the conclusion of trial, the trial court found that Dr. Coco and IMS had breached the applicable standard of care and negligently caused Mr. Dufreche emotional distress as a result. The trial court also awarded Mr. Dufreche $45,000 in damages.

From this judgment, Dr. Coco and IMS now appeal.

## DISCUSSION

On appeal, Dr. Coco and IMS assign four assignments of error. First, they argue the trial court erred in finding they breached applicable standard of care by expecting Mr. Dufreche to follow-up with their office to obtain his HIV test results in person. Second, they argue the trial court erred in not assessing comparative

fault to Mr. Dufreche for his failure to follow-up and mitigate his damages by not complying with medical advice to practice safe sex. Third, they argue the trial court erred in refusing to allow cross-examination of Mr. Dufreche on his safe sex practices to demonstrate his lack of credibility. Finally, they argue the trial court erred in finding Dr. Coco and IMS caused Mr. Dufreche damages for negligent infliction of emotional distress when there was no evidence at trial that Dr. Coco or IMS acted outrageously. We address each assignment of error in turn.

La. R.S. 9:2794 governs a plaintiff's burden of proof against a physician for medical malpractice:

A. In a malpractice action based on the negligence of a physician…the plaintiff shall have the burden of proving:

   (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians…licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians…within the involved medical specialty.

   (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

   (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Therefore, in order to prevail on his claim and recover damages against IMS and Dr. Coco, who in this matter specialized as an infectious disease physician, Mr. Dufreche needed to establish: (1) the degree of knowledge or skill or the degree of care ordinarily exercised by infectious disease physicians and physician's clinics; (2) that Dr. Coco and IMS either lacked that degree of

6

knowledge or skill or deviated from the standard of care in treating Mr. Dufreche; and (3) that, due to Dr. Coco's and IMS's failure to exercise reasonable care or possess the degree of knowledge or skill necessary, they caused injury—here, emotional distress—to Mr. Dufreche that would not have otherwise occurred. In awarding damages, the trial court found that Mr. Dufreche met this burden.

### Breach of the Standard of Care

In their first assignment of error, Dr. Coco and IMS contend the trial court erred in finding that they breached the applicable standard of care owed to Mr. Dufreche by expecting him to follow-up to receive his HIV test results in person. They argue that it was their standard practice to require patients to return for an in-person appointment to receive HIV test results. They argue that, based on recommendations from the Center of Disease Control ("CDC") that were introduced at trial, as well as the testimony of medical review panelist Dr. Ehrensing, who testified as an expert in infectious diseases, this practice was reasonable given the sensitive nature of communicating HIV test results to patients. They further argue that, because Mr. Dufreche is a sophisticated man who was knowledgeable about HIV testing and who specifically requested the HIV test Dr. Coco ordered, the onus was on him to follow-up to retrieve his test results.

Mr. Dufreche counters that he was never informed of the policy regarding follow-up appointments by Dr. Coco or any other IMS staff member. Instead, according to Mr. Dufreche, neither Dr. Coco nor IMS produced any evidence that they told him of this policy and Mr. Dufreche explicitly testified that he was never informed of the policy and was instead told that he would be notified when the test results came back. He also argues that Dr. Ehrensing's expert testimony established that Dr. Coco's and IMS's failure to inform Mr. Dufreche of their

7

policy requiring follow-up appointments to retrieve HIV test results was a breach of the standard of care, and thus, the trial court correctly found that Dr. Coco and IMS breached the standard of care.

"In civil cases, including medical malpractice cases, Louisiana appellate courts apply the manifest error or clearly wrong standard of review to a trier of fact's factual findings." *Serpas v. Tulane Univ. Hosp. & Clinic*, 2013-1590, p. 12 (La. App. 4 Cir. 5/14/14), 161 So.3d 726, 736 (citing *Jackson v. Tulane Medical Center Hosp. and Clinic*, 2005-1594, p. 5 (La. 10/17/06), 942 So.2d 509, 512). *See also Johnson v. Ray*, 2012-06, 2012-07, p. 6 (La. App. 4 Cir. 12/5/12), 106 So.3d 629, 635 (internal citation omitted). "Under that standard, an appellate court may not set aside the findings of the trier of fact…unless the findings are clearly wrong or manifestly erroneous." *Id.* (citing *Detraz v. Lee*, 2005-1263, p. 7 (La. 1/17/07), 950 So.2d 557, 561; *Stobart v. State Through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)).

In reviewing a fact finder's determination, "an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." *Eisenhardt v. Snook*, 2008-1287, pp. 6-7 (La. 3/17/09), 8 So.3d 541, 545 (citing *Ambrose v. New Orleans Police Dep't Ambulance Service*, 1993-3099, (La. 7/5/94), 639 So.2d 216, 221). "Where there are two permissible views of the evidence, the fact-finder's choice cannot be manifestly erroneous or clearly wrong." *Wallace v. Howell*, 2009-1146, p. 2 (La. App. 4 Cir. 1/13/10), 30 So.3d 217, 218. *See also Rosell*, 549 So.2d at 844. In medical malpractice cases, "[w]hen there is conflicting expert testimony concerning the defendant's compliance with the standard of care, the reviewing court will give great deference to the fact-finder's conclusion." *Serpas*, 2013-1590,

p. 13, 161 So.3d at 736-37 (citing *Landeche v. McSwain*, 1996-0959, p. 10 (La. App. 4 Cir. 2/5/97), 688 So.2d 1303, 1309).

Based on a review of the record, the trial court did not commit manifest error in finding that Dr. Coco and IMS breached the standard of care. Although Dr. Coco and IMS contend otherwise, there was no determination that the policy requiring in-person follow-up appointments to obtain HIV test results was a breach of the standard of care. The record shows that Dr. Ehrensing's expert opinion was that the policy was reasonable given the sensitive nature of giving positive HIV test results to patients and the possibility that physicians will need to provide counseling and treatment options to their patients when they receive the news that they are HIV positive. Rather, the breach occurred when Dr. Coco and IMS failed to notify Mr. Dufreche of the policy requiring patients to schedule in-person follow-up appointments to obtain their HIV test results. Dr. Coco and IMS did not produce any evidence that they notified Mr. Dufreche of the policy, only that it was their "pattern and practice" to notify patients of the policy. Dr. Ehrensing opined that it was a breach of the standard of care for Dr. Coco and IMS to fail to notify Mr. Dufreche of the policy. Additionally, Dr. Coco himself testified that, as an infectious disease physician, it was his duty to prevent the spread of HIV. Dr. Coco did not serve this duty when he failed to notify a patient whom Dr. Coco knew was HIV positive that the patient had HIV. Therefore, the record supports the trial court's ruling that Dr. Coco and IMS breached the standard of care.

*Comparative Fault*

Next, we address Dr. Coco's and IMS's second assignment of error concerning the allocation of fault. Dr. Coco and IMS argue the trial court erred in assessing one hundred percent of the fault for Mr. Dufreche's damages to them

9

while failing to find Mr. Dufreche comparatively at fault for his failure to follow-up on obtaining his HIV test results. They argue Mr. Dufreche had a duty to follow-up on a test he requested. They further contend that some of the emotional distress Mr. Dufreche suffered as a result of worrying that he may have infected others with HIV while he was unaware he had HIV was caused by Mr. Dufreche's failure to practice safe sex, despite evidence in the record that showed several medical professionals counselled Mr. Dufreche to do so.

"As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault." *Duncan v. Kansas City S. Ry. Co.*, 2000-0066, p. 10 (La. 10/30/00), 773 So.2d 670, 680 (citing *Clement v. Frey*, 1995-1119, p. 5 (La. 1/16/96), 666 So.2d 607, 609). "Therefore, an appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous." *Id.*, 2000-0066, pp. 10-11, 773 So.2d at 680 (citing *Clement*, 1995-1119, p. 7, 666 So.2d at 611; *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 335 (La. 1977)).

A review of the record shows that the trial court was not manifestly erroneous in its allocation of fault. As discussed previously, the record supports the trial court's conclusion that Dr. Coco and IMS did not inform Mr. Dufreche of their policy requiring follow-up appointments to retrieve HIV test results. Furthermore, Mr. Dufreche and Dr. Coco testified that this was Mr. Dufreche's first and only visit to Dr. Coco's office, showing that Mr. Dufreche would have no other way of knowing of the policy aside from being informed by Dr. Coco or another IMS staff member at his appointment. Mr. Dufreche testified that Dr. Coco assured him multiple times that he likely had nothing to worry about because his symptoms were likely caused by a virus and that, if the tests showed something

that would cause concern, Dr. Coco or IMS would let him know. This supports the trial court's conclusion that the onus was on Dr. Coco and IMS to contact Mr. Dufreche when his HIV test came back with a positive result. It is undisputed that Dr. Coco, nor anyone else at IMS, contacted Mr. Dufreche with his results.

Likewise, the record supports the finding that Mr. Dufreche's emotional distress came from the fifteen-month delay in learning of his diagnosis because he worried about how the delay would affect his treatment of HIV, his future prognosis, and whom he may have infected in the meantime. This assignment of error lacks merit.

### Cross-examination of Mr. Dufreche

We next address IMS's and Dr. Coco's third assignment of error, wherein they contend the trial court erred in refusing to allow them to cross-examine Mr. Dufreche on his safe sex practices after Mr. Dufreche learned he was HIV positive. Dr. Coco and IMS argue this cross-examination was necessary to establish that, despite his statements to the contrary, Mr. Dufreche's alleged emotional distress caused by the fifteen-month delay in learning he was HIV positive was not genuine and truthful. Instead, Dr. Coco and IMS contend that Mr. Dufreche did not practice safe sex after learning of his diagnosis, which they argue demonstrates Mr. Dufreche's lack of credibility in his testimony about his emotional distress. They argue that the trial court would have determined Mr. Dufreche was not credible had they been allowed to cross-examine Mr. Dufreche on his sexual practices after he learned he was HIV positive, and this court should reverse the trial court's judgment as a result.

We review the trial court's refusal or admission of certain testimony based on an abuse of discretion standard of review. *Miller v. S. Baptist Hosp.*, 2000-1352,

p. 15 (La. App. 4 Cir. 11/21/01), 806 So.2d 10, 21. "[T]he trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." *Libersat v. J & K Trucking, Inc.*, 2000-00192, p. 11 (La. App. 3 Cir. 10/12/00), 772 So.2d 173, 179. "However, where the trial court has committed error in the admission or refusal to admit evidence, or in instructing a jury, when the appellate court has all of the facts before it such error will not warrant remand and the appellate court may make its own independent conclusion as to the facts as revealed in the record before it." *Miller*, 2000-1352, pp. 15-16, 806 So.2d at 21 (citing *Parmelee v. Martin Marietta Michoud Aerospace, Inc.*, 566 So.2d 441, 444 (La. App. 4 Cir. 1990)). Furthermore, "[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell*, 549 So.2d at 844.

Here, the record supports the trial court's determination that Mr. Dufreche was credible in his testimony about the emotional distress he suffered in learning he had gone fifteen months without knowing he was HIV positive. Mr. Dufreche testified that he lost sleep and could not eat due to his emotional distress and that he worried what affect the delay would have on his prognosis in treating HIV. Additionally, the record shows that Mr. Dufreche first learned he was HIV positive over the telephone from Ms. Boutte, a social worker with the LDH. Learning he was HIV positive via telephone further exacerbated his worries because, as Dr. Coco and Dr. Ehrensing testified, communicating the results of a positive HIV test should be done in person. This assignment of error lacks merit.

***Damages for Negligent Infliction of Emotional Distress***

Finally, we address IMS's and Dr. Coco's last assignment of error. They argue that the trial court erred in awarding damages to Mr. Dufreche for his negligent infliction of emotional distress claims. Here, Mr. Dufreche alleged that Dr. Coco and IMS committed medical malpractice by negligently causing him emotional distress without causing him bodily harm or physical injury. The seminal case in Louisiana governing claims of negligent infliction of emotional distress without bodily harm is *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081 (La. 1990). In *Moresi*, the Louisiana Supreme Court held that, generally, Louisiana jurisprudence does not impose liability upon defendants for plaintiffs' claims of emotional distress without accompanying physical injury, illness, or other bodily harm.

In certain "special circumstances," however, a plaintiff can recover against a defendant for emotional distress without physical injury, so long as the plaintiff shows "genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id*. at 1096. In addition, "[f]or a cause of action for intentional or negligent infliction of emotional distress, there must be proof that the defendant violated some legal duty to the plaintiff, and the plaintiff must meet the heavy burden of proving outrageous conduct by the defendant." *Succession of Harvey v. Dietzen*, 1997-2815, p. 10 (La. App. 4 Cir. 6/24/98), 716 So.2d 911, 917. *See also Simmons v. State*, 2018-0174, p. 5 (La. App. 4 Cir. 8/29/18), 255 So.3d 701, 705, *writ denied*, 2018-1613 (La. 12/17/18), 259 So.3d 345. In the context of a medical malpractice action, "in order to prove entitlement to damages for negligent infliction of emotional distress, the

[plaintiff] must prove that defendant committed malpractice." *Gonzales v. Ochsner Clinic Found.*, 2014-873, p. 11 (La. App. 5 Cir. 5/14/15), 170 So.3d 1099, 1106.

Whether the trial court properly awarded Mr. Dufreche damages for his negligent infliction of emotional distress claim against IMS and Dr. Coco turns on whether Mr. Dufreche demonstrated that IMS and Dr. Coco committed malpractice, that IMS's and Dr. Coco's conduct was outrageous, and that their conduct caused Mr. Dufreche genuine and serious mental distress. Furthermore, in assessing the conduct of Dr. Coco and IMS, "[t]he susceptibility of a particular plaintiff should be taken into account whether the defendant intended or negligently inflicted severe emotional distress." *Succession of Harvey*, 1997-2815, p. 10, 716 So.2d at 917.

IMS and Dr. Coco argue the trial court did not properly award damages to Mr. Dufreche because there was no evidence adduced at trial that their actions were outrageous or caused Mr. Dufreche severe emotional distress. Mr. Dufreche counters that Dr. Coco's and IMS's conduct in receiving the HIV test results, reviewing them, and not taking steps to notify Mr. Dufreche of the results meets the standard of outrageous conduct and the trial court properly awarded damages. We agree.

We find that the trial court properly found that Dr. Coco and IMS committed malpractice and caused Mr. Dufreche emotional distress. Dr. Coco and IMS produced no evidence at trial that they notified Mr. Dufreche of their policy that he needed to make a follow-up appointment to obtain his test results in person. Instead, the record shows that Dr. Coco received Mr. Dufreche's test results, reviewed them on two separate occasions, and yet, took no steps to notify Mr. Dufreche that he was HIV positive. Meanwhile, Dr. Ehrensing provided

14

uncontroverted expert testimony that Dr. Coco's and IMS's failure to notify Mr. Dufreche of the policy was a breach of the standard of care. This is particularly true in light of the evidence at trial—including the testimony of Dr. Coco himself—that it was Dr. Coco's duty as an infectious disease specialist to prevent the spread of HIV. Additionally, Dr. Coco and Mr. Dufreche both testified that they discussed Mr. Dufreche's regular HIV testing during Mr. Dufreche's appointment with Dr. Coco, showing that Dr. Coco was aware that Mr. Dufreche was particularly susceptible to worries about whether or not he was HIV positive. Likewise, the trial court did not abuse its discretion in its determination that Mr. Dufreche gave credible testimony about his emotional distress caused by the fifteen-month delay in learning of his HIV diagnosis being genuine and severe. There is nothing in the record to suggest that Mr. Dufreche's emotional distress was unreasonable in light of the evidence produced at trial. This assignment of error lacks merit.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment finding that Dr. Coco and IMS breached the applicable standard of care in their treatment of Dr. Dufreche and awarding Mr. Dufreche $45,000 in damages.

**AFFIRMED**

15