JAMES F. McKAY III, Judge.
hln this survival and wrongful death action, the defendants, Nursefinders, Inc. and National Union Fire Insurance Company, appeal the trial court’s judgment in favor of the plaintiff, Desiree Johnson. We affirm. The defendants also raise an exception of prescription, which we deny.
FACTS AND PROCEDURAL HISTORY
On the night of May 11, 2000, John Johnson was admitted to Tulane University Medical Center. Prior to his admission, Mr. Johnson, an insulin-dependent diabetic ■with a history of drug use, had experienced abdominal and back pain accompanied by vomiting, which lead to severe dehydration. His admitting and treating physician, Dr. Tracy Conrad, diagnosed him with diabetic ketoacidosis. Dr. Conrad’s plan was to get Mr. Johnson’s diabetic ketoacidosis under control with gentle hydration and management of blood sugars through insulin therapy. At approximately 9:00 a.m., on the morning of May 12, 2000, Dr. Conrad determined that Mr. Johnson’s condition was improving and he continued to prescribe general hydration, antibiotics, and management of blood sugars.
|2Puring the day on May 12, 2000, Mr. Johnson was cared for by Tulane University Medical Center’s regular nursing staff. One of those nurses, Ms. D. Williams, performed two head-to-toe assessments of Mr. Johnson. In her notes, she indicated that Mr. Johnson’s abdomen was soft and that he had active bowel sounds and yellow urine. She also noted that he had equal range of motion, equal and strong extremity strength, and a steady gait.
At 7:00 p.m., on May 12, 2000, Mr. Johnson’s nursing care was assumed by Harriet Fleming Ray, an agency nurse provided by Nursefinders, Inc. Normally, Ms. Ray would perform an initial assessment of each patient under her care and then return to conduct a full head-to-toe assessment. When Ms. Ray first visited Mr. Johnson’s room, Mr. Johnson and his wife, Desiree, informed her that Mr. Johnson’s legs were numb and that his leg had flopped out of the bed. Ms. Ray told the Johnson’s that this was caused by Mr. Johnson’s fever. Ms. Ray did not report this change in Mr. Johnson’s condition to the charge nurse or a physician.
*634 When Ms. Ray conducted the head-to-toe assessment of Mr. Johnson at approximately 8:15 p.m., on May 13, 2000, she noted that he had a firm abdomen and weak extremity strength. However, there is no indication if this weakness was equal or unequal. Ms. Ray also failed to note any comments under “sensation” and was “unable to assess” Mr. Johnson’s mobility. Again, Ms. Ray did not report this change in condition to a charge nurse or a physician.
At approximately 3:40 a.m., on May 13, 2000, Mr. Johnson complained of being unable to move his legs at all. The nurse’s notes indicated that he had not |seliminated since 1:30 p.m. the previous day. At his time, Ms. Ray inserted a Foley catheter and relieved Mr. Johnson of a significant amount of dark brown urine. It was also at this time that Ms. Ray first notified the charge nurse of the change in Mr. Johnson’s condition. The charge nurse notified Dr. Jens Eichorn, a resident in internal medicine. Mr. Johnson was likely already a paraplegic with little chance of recovery at this time.
An MRI revealed an epidural abscess at the T-5 to T-7 level. A neurosurgeon was called in and emergency spinal surgery was performed. Following the surgery, Mr. Johnson was a paraplegic below his mid-thoracic region.
On March 27, 2001, Mr. and Mrs. Johnson initiated a Medical Review Panel proceeding against Tulane and Mr. Johnson’s treating physicians. On January 14, 2003, Mr. and Mrs. Johnson supplemented their complaint to name “Nurse Harriet.” On December 29, 2003, they again supplemented their complaint to name Harriet Ray and Nursefinders. When the Patient’s Compensation Fund notified Mr. and Mrs. Johnson that Nursefinders and Ms. Ray were not qualified healthcare providers under the Louisiana Medical Malpractice Act, the Johnsons filed a lawsuit against Nursefinders and Ms. Ray in Orleans Parish Civil District Court.[1] After the Medical Review Panel rendered its opinion concerning the qualified defendants, the plaintiffs then amended their lawsuit to add the qualified defendants.
|4On August 18, 2008, Mr. Johnson died due to complications from his paraplegia. On June 23, 2009, Mrs. Johnson filed a wrongfül death and survival action in Orleans Parish Civil District Court.[2] The trial court consolidated this lawsuit with the pending medical malpractice action for purposes of discovery and trial. In October of 2010, the trial court severed the two cases.[3] The wrongful death and survival action proceeded to trial on March 15 and 16, 2011. After trial, the court awarded the following damages: $900,000.00 for survival; $150,000.00 for wrongful death; $126,105.14 for medical expenses; $178,233.50 for lost wages; and $4,239.00 for funeral and burial expenses.
On June 13, 2011, Mrs. Johnson filed a motion for new trial to establish date of first judicial demand for pre-judgment interest, contending that interest should be calculated from the filing of the 2004 lawsuit. She later amended her request to seek interest from the date of the filing of the PCF complaint. The trial court agreed with the plaintiff and issued a judgment decreeing that interest on the survival, medical expenses, and lost wages damages accrues from March 27, 2001. Following the judgment on new trial, the plaintiff filed a motion to tax costs totaling *635 $33,641.37. The trial court awarded these costs.
On September 27, 2011, Nursefinders filed a petition and order for suspensive appeal of the original judgment, the judgment on motion for new trial, and the judgment awarding costs. On February 16, 2012, Nursefinders filed an exception of prescription in this Court.
|,DISCUSSION
On appeal, the defendants raise the following assignments of error: 1) the finding that the conduct of Nursefinders’s licensed practical nurse (LPN) caused Mr. Johnson’s paraplegia is erroneous; 2) the trial court erred in excluding the expert opinions of Dr. Donald Dietze, the neurosurgeon who performed the emergency laminectomy on Mr. Johnson; 3) the trial court erred in allowing a non-practicing rehabilitation doctor, Dr. Harold Katz, to testify as to expert opinions in neurology/neurosurgery, acute care of spinal cord injuries, and the standard of care applicable to acute care hospital nurses; 4) the trial court’s allocation of 100 % fault to Nursefinders and the allocation of no comparative fault to Tulane and its staff and physicians is erroneous; 5) wrongful death damages of $150,000.00 is an excessive award to a wife who has been separated from her husband for six years at the time of death; 6) the judgment erroneously awards lost wages that are completely unsupported by fact or expert evidence; 7) the judgment on motion for new trial erroneously calculates interest on the survival damages in this suit filed in 2009 against non-qualified healthcare providers as relating back to the 2001 filing of the Patient’s Compensation Fund Complaint against qualified providers who were not parties to the judgment awarding the damages; and 8) specific items of costs taxed by the trial court are not allowed by statute or are an abuse of the court’s discretion. The defendants also raise an exception of prescription.
| bFactual Findings
In their first specification of error, the defendants contend that the trial court erroneously found that the conduct of Ms. Ray caused Mr. Johnson’s paraplegia. The standard of review for medical malpractice claims is the same manifest error/clearly wrong standard applicable to ordinary negligence actions. McCarter v. Lawton, 2009-1508 (La.App. 4 Cir. 7/21/10), 44 So.3d 342. A court of appeal may not set aside the findings of fact made by a jury or trial court unless those findings are clearly wrong or manifestly erroneous. See Stobart v. State through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). In order to find that the factfinder’s determinations were manifestly erroneous or clearly wrong: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. See Stamps v. Dunham, 07-0095 (La.App. 4 Cir. 9/19/07), 968 So.2d 739. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id.
In the instant case, Ms. Ray failed to notify the charge nurse or a physician of the deterioration in Mr. Johnson’s condition until 3:40 a.m. on May 13, 2000, some eight hours after she first became aware of the deterioration in his condition. At trial, Nancy McNamara R.N., the plaintiffs expert in nursing, testified that during the head-to-toe initial assessment performed by Ms. Ray, the nurse had a |7duty to report any “untoward change” in patient’s condition. In Ms. McNamara’s opinion, *636 Ms. Ray breached the standard of care for nurses by failing to report the numerous, ominous untoward changes in Mr. Johnson’s condition for over eight hours. Dr. Conrad, who also testified at trial, believed that by failing to call a physician, Ms. Ray had effectively reached a diagnosis and substituted her judgment for that of a doctor. Dr. Howard Katz, an expert witness in physical medicine and rehabilitation with a board certification in spinal cord injury, testified that Ms. Ray’s inaction caused Mr. Johnson’s paraplegia. Ms. Ray also testified at trial. The trial court had “little confidence in her nursing skills and knowledge” and noted that Ms. Ray “did little to acquit herself from the allegations of negligence.”
Based on the record before this Court, it was reasonable for the trial court to conclude that Ms. Ray had breached the applicable standard of care by failing to notify anyone of the change in Mr. Johnson’s condition. Accordingly, we find no error in the trial court’s finding that Ms. Ray’s conduct caused Mr. Johnson’s paraplegia.

Expert Testimony of Dr. Donald Dietze

In their second specification of error, the defendants contend that the trial court erred in excluding the expert testimony of Dr. Donald Dietze. Dr. Dietze was the neurosurgeon who performed the emergency laminectomy on Mr. Johnson. The plaintiff assumed that Dr. Dietze was being called as a fact witness because the defendants had elected to proceed to trial without a liability expert or an expert |son medical causation. When the defendants attempted to have Dr. Dietze offer expert opinion on causation, the plaintiff objected and the trial court sustained their objection. Under La. C.C.P. art. 1428, the defendants were obligated to timely supplement their discovery to identify Dr. Dietze as an expert and to set forth his opinions. The defendants did not do this. Furthermore, a trial court has great discretion to exclude testimony for the failure to timely identify witnesses under La. C.C.P. art. 1428. See Chapman v. Regional Transit Authority, 95-2620 (La.App. 4 Cir. 10/2/96), 681 So.2d 1301. Accordingly, we find no error or abuse of discretion in the trial court’s excluding the expert testimony of Dr. Dietze.

Expert Testimony of Dr. Howard Katz

In their third specification of error, the defendants contend that the trial court erred in allowing Dr. Howard Katz to testify as an expert witness in the areas of neurology/neurosurgery, acute care of spinal cord injuries, and the applicable standard of care applicable to acute hospital nurses.
Dr. Katz has been a practicing physician for twenty-five years and is board certified in physical medicine and rehabilitation, as well as being board certified in spinal cord injury since 2000. Dr. Katz evaluated Mr. Johnson on October 16, 2007. Dr. Katz also reviewed the hospital records that evidenced Mr. Johnson’s efforts at rehabilitation and documented the residual deficits he sustained as a result of the delayed diagnosis.
The defendants contend that Dr. Katz is not qualified under La. R.S. 9:2794(D), the statute that establishes physician qualifications for expert testimony on |3whether a “physician departed from the accepted standards of medical care.” However, Dr. Katz was never identified as a liability witness on any standard of care issue; he issued an opinion regarding the causation of Mr. Johnson’s paraplegia. There is nothing in the statute that prevented Dr. Katz from testifying regarding causation. In fact, in Hebert v. Podiatry Ins. Co. of America, 96-567 (La.App. 3 Cir. 10/9/96), 688 So.2d 1107, an expert not qualified to offer an opinion regarding the standard of *637 care was specifically allowed to testify regarding causation. Accordingly, we find no error in the trial court’s allowing Dr. Katz to offer expert testimony as to causation.

Allocation of Fault

In their fourth specification of error, the defendants contend that the trial court erred in allocating 100% fault to Nursefinders and allocating no comparative fault to Tulane and its staff and physicians. The determination of whether comparative fault applies in a particular case is essentially a factual one and subject to the manifest error standard of review. Davis v. Hoffman, 2000-2326 (La.App. 4 Cir. 10/24/01), 800 So.2d 1028, 1081. Only if the apportionment of fault is found to be clearly wrong can an appeals court adjust percentages, and then only to the lowest/highest point within the factfinder’s reasonable discretion. Id. In the instant case, the trial court agreed with the medical review panel that Dr. Eichorn may not have acted with sufficient urgency in obtaining the radiology scans, but the trial court found that this was of no consequence given that Mr. Johnson was already irreversibly paralyzed by the time Dr. Eichorn was alerted to his condition. ImThere is also no indication that Dr. Conrad’s initial diagnosis and treatment of Mr. Johnson was deficient in any way, and as stated above any deviation after 3:40 a.m. on May 12, 2000 would not have made a difference. Furthermore, there is nothing in the record to indicate that Ms. Williams breached the standard of care in her care of Mr. Johnson. Accordingly, we find no error in the trial court’s allocation of 100% fault to Nursefinders.

Wrongful Death Damages

In their fifth specification of error, the defendant’s contend that $150,000.00 in wrongful death damages was an excessive award to Mrs. Johnson. A trial court’s assessment of quantum is entitled to great deference on review because it is a determination of fact. Menard v. Lafayette Ins. Co., 2009-1869, p. 14 (3/16/10), 31 So.3d 996, 1007. Therefore, an appellate court should rarely disturb an award on review. Id. It is only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). It is only when an abuse of discretion is found that the reviewing court will determine the highest or lowest point within the court’s discretion. Guillot v. Daimlerchrysler Corp., 2008-1485, p. 30 (La.App. 4 Cir. 9/24/10), 50 So.3d 173, 196.
In the instant case, the defendants base their argument on the fact that Mr. and Mrs. Johnson had been separated for six years at the time of his death in ^addition to prior separations and a period where Mr. Johnson was incarcerated for a drug conviction. The trial court, however, was aware that Mr. and Mrs. Johnson were separated at the time of his death, but it still found that “[t]he evidence established she cared for him emotionally and physically and suffered a significant loss as a result of his death.” Based on the record before this Court, there is nothing to suggest that the foregoing is not true. Therefore, an award of $150,000.00 in wrongful death damages to Mrs. Johnson appears to be reasonable. Accordingly, we find no abuse of discretion in the trial court’s award of wrongful death damages to Mrs. Johnson.

Lost Wages

In their sixth specification of error, the defendants contend that the trial *638 court erred in awarding lost wages that were completely unsupported by fact or expert evidence. The trial court found that Mr. Johnson was rendered totally disabled as a result of his permanent paraplegia. At trial, the plaintiffs presented the Social Security Administration’s Itemized Statement of Earnings for Mr. Johnson. This statement, which was not refuted, reflected that Mr. Johnson’s average earnings were $20,988.00 per year prior to May 12, 2000. Therefore, the trial court awarded $173,233.50 in lost wages for the period of time from May 12, 2000 to Mr. Johnson’s death on August 11, 2008. The amount of Mr. Johnson’s average annual earnings multiplied by the number of years he lived after May 12, 2000 comes to roughly the amount awarded by the trial court in its award for lost wages. A claim for lost wages does not have to be proven by mathematical certainty, it |12only requires such proof as reasonably establishes the claim. McLaughlin v. Royal Sonesta, Inc., 626 So.2d 438 (La.App. 4 Cir.1993). Accordingly, we find no error in the trial court’s awarding $173,233.50 in lost wages.

Pre-judgment Interest

In their seventh specification of error, the defendants contend that the judgment on the motion for new trial erroneously calculated interest on the survival damages in the suit filed in 2009 against non-qualified healthcare providers as relating back to the 2001 filing of the PCF complaint against qualified providers who were not parties to the judgment awarding the damages. When the plaintiffs filed their complaint with the PCF, they were not aware that Nursefinders and Ms. Ray were not covered under the act; as far as they knew, Ms. Ray was employed by Tulane and they had no knowledge that Nur-sefinders was even involved in the incident before discovery. Upon learning that Nursefinders and Ms. Ray were not qualified under the act, the plaintiffs filed suit against them in 2004. After Mr. Johnson’s death, Mrs. Johnson filed a wrongful death and survival action in 2009. The trial court consolidated these two lawsuits.
There is no prohibition against awarding pre-judgment interest for the survival damages from the date the medical review panel was instituted. In fact, La. R.S. 40:1299.47(M) states: “Legal interest shall accrue from the date of filing of the complaint with the board in a judgment rendered by a court in a suit for medical malpractice brought after compliance with this part.” It makes no difference whether or not the defendants were qualified healthcare providers. La. | lsR.S. 40:1299.47(M) reflects the legislature’s determination that the general rule of interest accrual in tort actions should be adjusted to account for the statutorily imposed delay that medical malpractice claims face. See Hall v. Brookshire Bros., Ltd., 2002-2404 (La.6/27/03), 848 So.2d 559. Furthermore, as stated above, the Johnsons believed that Ms. Ray was employed by Tulane and they were unaware of the involvement of Nursefinders. Once their identity and involvement were known, the Johnsons added them to the PCF complaint. Accordingly, we find no error in the trial court’s awarding prejudgment interest from the date of filing of the PCF complaint.

Costs

In their eighth specification of error, the defendants contend that specific items of costs taxed by the trial court were not allowed by statute or were an abuse of the court’s discretion. According to La. R.S. 13:3666 and La. R.S. 13:4533, as well as La. C.C.P. art.1920, the trial court has great discretion in awarding costs, including expert witness fees, deposition costs, *639 exhibit costs, and related expenses. Suprun v. Louisiana Farm Bureau Mutual Ins. Co., 2009-1555 (La.App. 1 Cir. 4/30/10), 40 So.3d 261, 267. Costs incurred in the 2004 lawsuit are based on claims that were incorporated into the instant case. It is unlikely that these costs will be awarded again. Therefore, it was not an abuse of discretion for the trial court to award them. There was also no abuse of discretion in the trial court’s awarding the plaintiffs’ medical expert fees.
| uException of Prescription
Nursefinders and National Union Fire Insurance Company have also brought an exception of prescription in this Court pursuant to La. C.C.P. art. 2163. They contend that all claims for damages allegedly caused by Ms. Ray’s care are prescribed under La. R.S. 9:5628.
Mr. and Mrs. Johnson initiated a medical review panel proceeding within a year of the incident that caused Mr. Johnson’s paraplegia. Upon learning of Ms. Ray’s identity and the involvement of Nursefin-ders, the Johnsons added them to the complaint. During the pendency of the medical review panel, prescription was suspended. When Mr. and Mrs. Johnson were notified that Nursefinders and Ms. Ray were not qualified healthcare providers, suit was filed in Civil District Court within the sixty (60) day period provided for by La. R.S. 40:1299.47 A(2)(a). Prescription was still suspended during this period. After the medical review panel rendered its opinion concerning the remaining defendants, Mr. and Mrs. Johnson amended their lawsuit to include these defendants. On August 18, 2008, Mr. Johnson died. Less than a year from the date of his death, Mrs. Johnson filed suit for Mr. Johnson’s wrongful death and survival claims on June 24, 2009. The two lawsuits were consolidated, but later severed for trial.
The right to recover the pre-death damages suffered by Mr. Johnson, and Mrs. Johnson’s right to sue for her own damages for her husband’s wrongful death were two separate causes of action that vested in Mrs. Johnson upon Mr. Johnson’s death pursuant to La. C.C. arts. 2315.1 and 2315.2. Louisiana courts have held that |1fithese two causes of action are vested property rights that vest immediately upon the death of plaintiffs decedent. Dean v. State, Department of Transportation and Development, 32,816 (La.App. 2 Cir. 12/8/99), 749 So.2d 846. This right is heritable regardless of whether a suit had already been filed by the decedent. See Guidry v. Theriot, 377 So.2d 319 (1979). In the instant case, before Mr. Johnson passed away, his survival damages were pending in the 2004 lawsuit; his claims had been timely filed and were not prescribed up to the time of his death. Furthermore, Mrs. Johnson received a vested property right to a survival cause of action at the time of his death. Accordingly, when Mrs. Johnson instituted a new action in 2009 to pursue her wrongful death and survival property rights as provided for by La. C.C. arts. 2315.1 and 2315.2, those right had not prescribed.
The cases cited by the defendants to support their contention that the claims have prescribed are clearly distinguishable from the facts of the instant case. In Warren v. Louisiana Medical Mutual Insurance Company, 2007-0492 (La.12/2/08), 21 So.3d 186, the Supreme Court considered the claims of a plaintiff that sought to institute a medical malpractice claim several years after the decedent’s death, even though she had never filed suit or brought a medical review panel during the decedent’s lifetime. In the instant case, Mr. and Mrs. Johnson had been named plain *640 tiffs in all medical review panel proceedings from the outset and both timely filed suit within the period of time prescription was suspended. In Guy v. Brown, 2011-0099 (La.App. 4 Cir. 7/6/11), 67 So.3d 704; writ denied, 2011-1875 (La.11/4/11), 75 So.3d 926, which involves the same decedent as the instant case, this |1fiCourt held that a medical malpractice claim filed by the decedent’s illegitimate daughter was prescribed even though the claim was filed less than one year from the decedent’s death because the daughter had not filed or been a party to a medical malpractice claim before the decedent’s death. In that case, the daughter was a stranger to the earlier timely filed medical malpractice claim and there was nothing for her wrongful death and survival claim to relate back to. In the instant case, Mrs. Johnson was a named plaintiff in the medical review panel proceedings from the outset, and had been a party plaintiff in the lawsuits from the beginning.
In the instant case, Mrs. Johnson filed a claim for wrongful death and survival damages less than one year from the date of Mr. Johnson’s death in accordance with La. C.C. arts. 2315.1 and 2315.2. Prior to that, she complied with the legal requirements of La. R.S. 40:1299.47 and La. R.S. 9:5628. She and Mr. Johnson timely filed the medical review panel proceeding. When they were notified that the defendants were not qualified healthcare providers under the Medical Malpractice Act, the Johnsons filed a lawsuit for their damages in Civil District Court. Mrs. Johnson could have converted that lawsuit to a wrongful death and survival action, but she chose to bring another lawsuit as allowed by law. In short, procedurally speaking, Mr. and Mrs. Johnson did everything right. Furthermore, the purpose of prescription is to prevent a lawsuit from being brought against a party who may no longer expect such an action. It is a practical invention to prevent stale actions from being brought before the courts. In the instant case, Nursefinders and Ms. Ray were well aware of Mrs. Johnson’s claims against them; |17they were not caught off guard. Accordingly, Mrs. Johnson’s claims for wrongful death and survival damages have not prescribed.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Also, the defendants’ exception of prescription is denied.
AFFIRMED; EXCEPTION DENIED
BELSOME, J., concurs in the result.

. 2004-2500.

. 2009-6409.

.The medical malpractice action filed in 2004 is still pending.