| | | |
|---|---|---|
| IN RE: MEDICAL REVIEW PANEL PROCEEDINGS OF SHAWN BORYCA | * | NO. 2020-CA-0670 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

| | |
|---|---|
| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| SHAWN BORYCA | NO. 2020-CA-0671 |
| VERSUS | |
| UNKNOWN EMPLOYEES OF AND THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND D/B/A TULANE UNIVERISTY HEALTH SCIENCES CENTER AND UNIVERSITY HEALTHCARE SYSTEM, L.C. D/B/A TULANE UNIVERISTY HOSPITAL AND CLINIC, AND KYLE DICKSON, M.D., JOSEPH KOVELESKIE, M.D., CHARLES COX III, M.D., RYAN HANSON, M.D., SUSAN MAIORANA, R.N., SANDRA G. SMITH, R.N., LAURIE MCNEAL, R.N. AND LISA DONELON, R.N. | |

| | |
|---|---|
| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| IN RE: MEDICAL REVIEW PANEL PROCEEDINGS OF SHAWN BORYCA | NO. 2020-CA-0672 |

| | |
|---|---|
| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| SHAWN BORYCA | NO. 2020-CA-0673 |
| UNKNOWN EMPLOYEES OF AND THE ADMINISTRATORS OF | |

**THE TULANE EDUCATIONAL FUND D/B/A TULANE UNIVERISTY HEALTH SCIENCES CENTER AND UNIVERSITY HEALTHCARE SYSTEM, L.C. D/B/A TULANE UNIVERSITY HOSPITAL AND CLINIC, AND KYLE DICKSON, M.D., JOSEPH KOVELESKIE, M.D., CHARLES COX III, M.D., RYAN HANSON, M.D., SUSAN MAIORANA, R.N., SANDRA G. SMITH, R.N., LAURIE MCNEAL, R.N. AND LISA DONELON, R.N.**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2006-07859, DIVISION "B-1"
Honorable Rachael Johnson,
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge Edwin A. Lombard)

*LOVE, J., CONCURS AND ASSIGNS REASONS*

Richard C. Stanley
Kathryn W. Munson
STANLEY REUTER ROSS THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, LA 70112

-AND-

Gary W. Bizal
GARY W. BIZAL, LLC
4907 Magazine Street
New Orleans, LA 70115

-AND-

Richard T. Gallagher Esq.
GALLAGHER AND WESTHOLZ
111 Veterans Memorial Blvd., Suite 1400
Metairie, LA 70005

    COUNSEL FOR PLAINTIFF/APPELLEE

Bryan J. Knight
NILES BOURQUE & KNIGHT, L.L.C.
201 St. Charles Avenue, Suite 3700
New Orleans, LA 70112

COUNSEL FOR APPELLANTS/KYLE DICKSON, M.D. AND THE
ADMINSTRATORS OF THE TULANE EDUCATIONAL FUND, d/b/a
TULANE HEALTH SCIENCES CENTER

Conrad Meyer
Sarah J.L. Christakis
Meghan E. Ruckman
CHEHARDY, SHERMAN, WILLIAMS, MURRAY, RECILE,
STAKELUM & HAYES L.L.P.
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

COUNSEL FOR DEFENDANT/APPELLEE

**JUDGMENT AFFIRMED**

# AUGUST 11, 2021

EAL

JFM

This appeal is from a medical malpractice case arising out of the treatment received by the plaintiff, Shawn Boryca, after a motorcycle accident. Two sets of defendants in these consolidated cases appeal the jury's judgment in favor of the plaintiff and the district court's denial of their motions for a new trial and directed verdict: (1) Kyle Dickson, M.D. (Dr. Dickson) and the Administrators of the Tulane Educational Fund d/b/a Tulane University Sciences ("Tulane") and (2) the Louisiana Patient's Compensation Fund and its oversight fund, the Louisiana Patient's Fund Oversight Board (PCF). After review of the record in light of the applicable law and arguments of the parties, the judgment of the district court is amended and, as amended, affirmed.

***Relevant Facts and Procedural History***

Dr. Dickson performed a four-hour surgery to repair plaintiff's hip socket wherein the plaintiff was positioned on a special table with a post between his legs to keep him stationary.[1] The surgery itself was successful but, several days later, the plaintiff developed a stage III pressure ulcer on his perineum. Treatment

---

[1] Specifically, the plaintiff suffered a comminuted acetabular fracture with femoral head impaction; the surgery was performed at Tulane Medical Center using a PROFx fracture table to keep the plaintiff stable for the duration of the complicated surgery.

1

required several surgical repairs, including a graft from the plaintiff's hip, resulting in a scar and scar tissue.[2]

On March 17, 2006, the plaintiff filed a complaint with the Louisiana Patient's Compensation Fund (PCF) for a medical review panel. The medical review panel found that Dr. Dickson complied with the applicable standard of care. The plaintiff filed this medical malpractice suit and, after a trial in December 2019, the jury returned a verdict in his favor, awarding him $300,000 in general damages with an additional $250,000 in special damages. In February 2020, Dr. Dickson and Tulane filed a *Motion for New Trial and/or Judgment Notwithstanding the Verdict and/or Remittitur*. A hearing was held in July 2020 on the defendants' post-trial motion. On September 24, 2020, the district court issued its final judgment (1) denying the motion for new trial or JNOV on the issue of liability; (2) denying the motion for new trial or JNOV on the issue of general damages; and (3) granting in part the motion for a JNOV on the issue of medical expenses, thereby reducing the special damages of $250,000 awarded by jury for medical expenses to the $51,575.72 for medical expenses stipulated to by the parties prior to trial.

This appeal was timely filed.

***Applicable Law***

The Louisiana Medical Malpractice Act defines "malpractice," in pertinent part, as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health

---

[2] The plaintiff has a 5 millimeter scar on his perineum which, he asserts, severely affects his daily life: he can no longer ride bikes or play softball with his daughters, needs higher toilets when he has bowel movements, must use baby wipes instead of regular toilet paper, must wear special clothing to prevent chaffing, and needs special accommodations at work due to the scarring and because the scarred area is sensitive to extreme temperatures. In addition, the plaintiff claims that the scar still tears and bleeds and is a source of embarrassment in intimate situations, as well as the cause of his 80-pound weight gain since the accident.

care provider, to a patient, including failure to render services timely and the handling of a patient ...." La. Rev. Stat. 40:1231.1 A(13). The burden of proof in a medical malpractice case rests with a claimant who must prove by a preponderance of the evidence the three elements set forth in La. Rev. Stat. 9:2794 A. First, the plaintiff must establish (1) "[t]he degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances." La. Rev. Stat. 9:2794 A(1). Next, the plaintiff must establish "the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill." La. Rev. Stat. 9:2794 A(2). Finally, the plaintiff must establish that "as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred." La. Rev. Stat. 9:2794 A(3). In other words, "[a] medical malpractice plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiff's injuries resulting therefrom." *Pfiffner v. Correa*, 94-0924, p. 8 (La. 10/17/94), 643 So.2d 1228, 1233. Thus, the plaintiff must show that the injuries complained of were proximately caused by a breach of the standard of care, *i.e.* that a breach was the cause in fact of the injury alleged. *See Gaffney v. Giles*, 14-0384, p. 19 (La. App. 4 Cir. 4/29/15), 165 So.3d 1100, 1111; *see also Sandifer v. Wise*, 00-0293, p. 6 (La. App. 4 Cir. 2/7/01), 780 So.2d 1099, 1102 ("the plaintiff must ... demonstrate by a preponderance of the evidence a causal nexus between the defendant's fault and the injury alleged"). Thus, the medical malpractice plaintiff must show that he suffered

3

injuries because of the defendant's negligence that would not otherwise have occurred but he need not show that defendant's conduct was the only cause of the harm nor negate all other possibilities. *Pfiffner*, 94–0924 643 So.2d at 1233. Rather, the plaintiff must show by a preponderance of the evidence (or more probably than not) that he suffered the injury because of defendant's conduct. *Id.*

Generally, expert testimony is required "to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Schultz v. Guoth*, 10-0343, p. 7 (La. 1/19/11), 57 So.3d 1002, 1007; *see also Jackson v. State through Charity Hosp. of Louisiana at New Orleans,* 94–2090 (La. App. 4 Cir. 5/16/95), 655 So.2d 795 (to determine whether a physician possesses the requisite degree of knowledge or skill or whether he exercised reasonable care or diligence, the court is guided by expert witnesses who are members of the medical profession and who are qualified to testify), but the "district court is accorded broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert." *Johnson v. Morehouse Gen. Hosp.*, 10-0387, p. 17 (La. 5/10/11), 63 So.3d 87, 99. It is well-settled that "[w]here the alleged acts of negligence raise issues peculiar to the particular specialty involved, then only physicians in that specialty may offer evidence of the applicable standard of care," *Broussard v. Andersson*, 05-0006, pp. 6-7 (La. App. 4 Cir. 11/30/05), 921 So.2d 128, 132 (citation omitted), but "it is a specialist's knowledge of the requisite subject matter, rather than the specialty within which the specialist practices, which determines whether a specialist may testify as to the degree of care which should be exercised. *Howard v. Vincent*, 11-0912, p. 6 (La. App. 4 Cir. 3/28/12), 88 So.3d

4

1219, 1222; *see also Richardson v. Cotter*, 245 So. 3d 136, 143 (La. App. 2d Cir. 2017) (allowance of expert testimony is appropriate when the testimony is in regard "to the standard of care applicable to areas of the practice of medicine common to both disciplines."). Thus, the fact that a medical doctor is not a specialist in a particular field applies only to the effect on the weight to be given such testimony, not to its admissibility. *Hubbard v. State*, 02-1654, pp. 14-15 (La. App. 4 Cir. 8/13/03), 852 So.2d 1097, 1104–05 (citations and internal quotations omitted).

***Standards of Review***

In medical malpractice claims, the standard of review is manifest error or clearly wrong. *Johnson v. Ray*, 106 So. 3d 629, 635 (La. App. 4th Cir. 2012). "[T]he findings of fact made by a jury or trial court" may not be dismissed "unless those findings are clearly wrong or manifestly erroneous" regardless of whether an appellate court agrees with those findings. *Id.* Similarly, "[t]he determination of an expert's credibility is also . . . subject to the manifestly erroneous/clearly wrong standard of review." *McCarter v. Lawton*, 44 So. 3d 342, 347 (La. App. 4th Cir. 2010). In order to find the jury or district court verdict was manifestly erroneous or clearly wrong, an appellate court must determine that : 1) a reasonable factual basis for the findings made by the jury or trial court does not exist in the record and 2) those findings are determined to be manifestly erroneous or clearly wrong. *Johnson*, 106 So. 3d at 635; *see also Housley v. Cerise,* 579 So.2d 973, 979 (La.1991) (the causation of a person's injuries is a question of fact and should not be reversed on appeal absent manifest error).

In ruling on both a directed verdict and a motion for JNOV, the district court must determine whether "considering the evidence in the light most favorable to

5

the party opposed to the motion," the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable minds could not arrive at a contrary verdict on that issue." *Simon v. American Crescent Elevator Co.,* 99–2058, p. 14 (La. App. 4 Cir. 4/26/00), 767 So.2d 64, 73–4. On appeal, the question is not whether the plaintiff proved his case by a preponderance of the evidence but, rather, on review of the evidence submitted the appellate court could conclude that reasonable persons could not have reached a verdict in favor of the plaintiff). *Everhardt v. Louisiana Dept. of Transp. and Development,* 07–0981, p. 13 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1047.

### *Assignment of Error 1*

In the first assignment of error, Dr. Dickson and Tulane argue that the district court erred in qualifying Dr. Gordon as an expert witness because Dr. Gordon was not a surgeon in the same specialty as Dr. Dickson.

This assignment of error is without merit. The district court's determination as to whether a person is an expert witness under the manifest error/clearly wrong standard and, thus, we do not determine whether the factfinder was correct, "but whether the factfinder's conclusion was a reasonable one." *Johnson*, 106 So. 3d at 635. It is undisputed that Dr. Dickson is a pelvic surgeon and that Dr. Gordon is a spine surgeon who never performed the specific surgery underlying this case. However, Dr. Gordon's testimony was on the standard of care regarding the use of posts in surgery. As an orthopedic surgeon, Dr. Gordon has completed over four hundred hip, pelvis, and acetabular surgeries, mostly completed on a fracture table. He also was an assistant professor of surgery at Georgetown University hospital where he instructed residents the proper way to position a patient on a fracture table with the use of a perineal post.

6

At trial, Dr. Gordon testified that the pressure from the post should have been manually checked (by putting finger between post and body) to make sure the pressure was appropriate. Notably, Dr. Dickson testified that he did not manually check the pressure or have anything to do with placing the plaintiff on the table. In addition, Dr. Dickson acknowledge that he was ultimately responsible for how the plaintiff was placed on the table. Moreover, contrary to Dr. Dickson's argument, Louisiana jurisprudence does not require an expert to have performed the exact same surgery but, rather, looks to the witness's knowledge on the subject matter to determine whether he/she qualifies as an expert witness.

We find no error in the district court's decision to qualify Dr. Gordon as an expert witness. This assignment of error is without merit.

*Assignment of Error 2*

Next, Dr. Dickson and Tulane argue that it was error for the district court to deny their motion for a JNOV because (1) Dr. Gordon's testimony lacked substantial factual basis and was unreliable and 2) the district court relied solely on circumstantial evidence. In other words, Dr. Dickson and Tulane argue that even if Dr. Gordon is a qualified expert witness, the defense motion for a directed verdict should have been granted because Dr. Gordon's testimony was unreliable and without factual foundation.

As Dr. Gordon observed, "there's actually no discussion of the positioning of the patient" in the plaintiff's medical records. Dr. Gordon testified that the only explanation for the perineal injury suffered by the plaintiff, however, is that excessive pressure was applied to his perineum during surgery. Defense expert witnesses testified that perineal wounds can occur in this type of surgery even when the patient in properly positioned, but based on the testimony of Dr. Gordon,

7

the location of the injury, and Dr. Dickson's concession that he did not check the positioning but was ultimately responsible for it, it was not unreasonable for the jury to find medical malpractice by Dr. Dickson.

It is axiomatic that when there is conflicting expert testimony concerning the defendant's compliance with the standard of care, the reviewing court must give great deference to the fact-finder's conclusion. *See Serpas v. Tulane U. Hosp. and Clinic*, 161 So. 3d 726, 736-37 (La. App. 4th Cir. 2014). In this case, the testimony of Dr. Gordon, a qualified expert witness, supports the jury's conclusion. We find no error in the district court judgment on this issue.

This assignment of error is without merit.

### *Assignment of Error 3*

Next, the Dr. Dickson and Tulane argue that the jury erred when they found that Dr. Dickson breached the appropriate standard of care required for positioning a patient. Specifically, the defendants argue that the jury's reliance on Dr. Gordon's unqualified opinion was the reason why the jury erroneously found that Dr. Dickson breached the standard of care, *i.e.,* the jury should have accepted the expert testimony presented by the defense rather than the plaintiff.

As discussed above, the district court did not err in accepting Dr. Gordon as a qualified expert witness. Also as discussed above, even though the defendants presented expert testimony contrary to that of the plaintiff's expert, Dr. Gordon, this court must give "great deference to the fact-finder's conclusion" when there is conflicting expert testimony." *Serpas*, 161 So. 3d at 736-37. Under this standard, we do not find that jury's finding that Dr. Dickson breached the appropriate standard of care is manifestly erroneous or clearly wrong. Accordingly, this assignment of error is without merit.

*Assignment of Error 4*

Dr. Dickson and Tulane argue that the district court erred in denying their motion for a new trial.

The standard of review for a motion for new trial is "whether the trial court abused its discretion." *Campbell v. Tork, Inc.*, 870 So. 2d 968, 971 (La. 2004). In making this determination, an appellate court must balance the deference due to the jury in its role as a fact finder and the discretion given to the trial court in its decision on whether to grant a new trial. *Id.* Generally, a trial judge "may not interfere with a jury verdict with which he simply disagrees when that verdict is based on a fair interpretation of the evidence." *Id.* at 975.

The defendants' argue that they are entitled to a new trial because the jury's verdict was contrary to the law and evidence. Specifically, the defendants assert that Dr. Gordon was not qualified to be an expert witness in this suit, the trial court relied solely on circumstantial evidence, and that the jury erred when they found that Dr. Dickson breached the standard of care. As discussed with regard to the defendant's first, second, and third assignments of error, these assertions are wrong. Dr. Gordon's testimony that the plaintiff's injury was from excess pressure from the post during surgery provided a basis for reasonable fact-finders to reach a conclusion contrary to the testimony of the defendant's expert witnesses. Accordingly, the district court did not err by denying the defendants' motion for new trial.

This assignment of error is without merit.


*Assignment of Error 5*

Finally, Dr. Dickson and Tulane argue that the amount of general damages awarded to the plaintiff is excessive. After hearing conflicting testimony as to the severity and life altering consequences of the plaintiff's injury, the jury awarded the plaintiff $300,000 in general damages.

In awarding damages, the injury sustained is not the sole factor for the determination of damages. *Coleman v. Deno*, 832 So.2d 1016, 1023 (La. App. 4th Cir. 2002). Rather, factors such as mental and physical pain and permanent disabilities must be considered in the determination of whether the trier of fact abused their discretion. *Id.; see* La. Civ. Code art. 2324.1 (the jury is given great discretion in its assessment of both general and special damages). "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La.1993), *cert denied,* 510 U.S. 1114 (1994).

In this case, the defendants offer case law from 1973, 1979, and 1990 in support of their argument that the general damages award is excessive and should be reduced. Although awards for comparative injuries were much lower in the last century, this is not a persuasive basis for overturning the jury's general damages award in this decade. Accordingly, we find no error in the district court judgment denying the defendants' motion for a JNOV on the general damages award.[3]

This assignment of error is without merit.

*PCF Assignments of Error 1, 2, 3, & 4*

---

[3] The defendants do not appeal the district court decision to grant the defendants' motion for a JNOV in part, reducing the jury award for medical care and related expenses to that stipulated by the parties prior to trial.

10

In its appeal, the PCF argues that the district court erred in its denying the defendants' motion for a new trial, for a JNOV, and for a Remittitur on the issue of general damages because the evidence overwhelming points to the conclusion that Dr. Dickson did not breach the standard of care, the jury's verdict was contrary to the law and evidence, and the general damages award was excessively high based on the evidence presented to the jury. For the reasons discussed above, these arguments are without merit.

The PCF also argues "With respect to the February 5, 2020 Judgment on the Jury verdict, the trial court committed manifest error in failing to reduce the $550,000 in damages awarded by the jury to the statutory cap of $500,000, as set forth in La. [Rev. Stat.] 40:1231.2." The PCF asserts that the $300,000 in general damages and $250,000 awarded in medical expenses, for a total award of $550,000, exceeds the $500,000 statutory cap set forth in La. Rev. Stat. 40:1231.2. Therefore, the PCF "prays this Honorable Court reverse the trial court's February 5, 2020 Judgment on the Jury Verdict and remand to correct this issue and limit the PCF's liability to $300,000.

In light of the district court's judgment of September 24, 2020, reducing the award for medical care and related expenses from $250,000 to $51,575.72 for a total award of $351,575.72, this assignment of error is moot. Accordingly, we pretermit further discussion.

### Conclusion

For the reasons discussed above, we affirm the district court judgment of September 24, 2020.

11

**JUDGMENT AFFIRMED**